IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Gregory Boyer, as Administrator of the Estate of Christine Boyer, and on his own behalf,<br><br>Plaintiff,<br><br>v.<br><br>Advanced Correctional Healthcare, Inc., Lisa Pisney, Amber Fennigkoh, Monroe County Sheriff's Office, Stan Hendrickson, Danielle Warren, Shasta Parker, and Does 1-3,<br><br>Defendants. | Case No:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Gregory Boyer, as Administrator of the Estate of Christine Boyer (hereafter, "Plaintiff"), by counsel, Loevy & Loevy, brings this action against Advanced Correctional Healthcare, Inc., Lisa Pisney, Amber Fennigkoh, the Monroe County Sheriff's Office, Stan Hendrickson, Danielle Warren, Shasta Parker, and Does 1-3, and states as follows:

### INTRODUCTION

1.     Christine Boyer was a 41-year-old woman who suffered from congestive heart failure and high blood pressure.  When she was admitted to the Monroe County Jail on a Saturday evening, she told staff there that she took a variety of medications to control these serious conditions.  This information was relayed to two members of the medical staff who worked for a private contracting company, Defendant Advanced Correctional Healthcare, Inc. But instead of ensuring that Ms. Boyer had the medicine she needed, the nurses decided that she could go without those medications until after the weekend.

2.     The next day, Ms. Boyer's blood pressure went up, and she informed the Jail's staff that she was suffering numerous symptoms of an impending heart attack, including acute

1

chest pain, pain under the left shoulder, shortness of breath, and other similarly serious symptoms. There was a fully functioning hospital with an emergency room across the street. But instead of referring Ms. Boyer there, the two private nurses did virtually nothing, permitting Ms. Boyer access only to an over-the-counter dose of Aspirin. A few hours later, Ms. Boyer suffered a massive heart attack and died.

3. In this action, Ms. Boyer's husband, Greg Boyer, seeks to hold the Defendants in this case accountable for their failure to care for Ms. Boyer and prevent her death.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

6. Plaintiff Gregory Boyer is the husband of Christine Boyer, and the duly appointed Administrator of the Estate of Christine Boyer. Christine Boyer's estate was filed in the Probate Division of the Circuit Court of Monroe County.

7. At all times relevant to the events at issue in this case, Christine Boyer, the decedent in this case, was in the custody of Monroe County Sheriff's Office.

8. Defendant Advanced Correctional Healthcare, Inc. ("ACH") is a private company that contracted to provide healthcare to detainees of the Monroe County Jail. In this capacity, ACH also employed defendants Pisney and Fennigkoh.

9. At all times relevant to his involvement in the case, Defendant Captain Stan Hendrickson was the Captain of Monroe County Jail and was responsible for the implementation, oversight, and supervision of policies and practices at Monroe County Jail. Defendant Hendrickson is sued here in his individual capacity. At all times relevant to the events

at issue in this case, Defendant Hendrickson was acting under the color of law and within the scope of his employment with Monroe County.

10. At all times relevant to their involvement in the case, Defendant Sgt. Danielle Warren was a correctional sergeant at Monroe County Jail. Defendant Warren is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Warren was working under the color of law and within the scope of her employment with Monroe County.

11. At all times relevant to her involvement in the case, Defendant Sgt. Shasta Parker was a correctional sergeant at Monroe County Jail. Defendant Parker is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Parker was acting under the color of law and within the scope of her employment with Monroe County.

12. At all times relevant to her involvement in the case, Defendant Lisa Pisney was the Nurse Practitioner employed by ACH. At all times relevant to the events at issue in this case, Defendant Pisney was acting under the color of law and within the scope of her employment with ACH.

13. At all times relevant to her involvement in the case, Defendant Amber Fennigkoh was a Registered Nurse employed by ACH at the Monroe County Jail. At all times relevant to the events at issue in this case, Defendant Fennigkoh was acting under the color of law and within the scope of her employment with ACH.

## FACTS

14. Christine Boyer was a 41-year-old woman who lived in Tomah, Wisconsin with her husband Greg. She was outgoing and loved road trips. She was an auxiliary in the local Combat Veterans Motorcycle Association and organized charity events for veterans. She also enjoyed hunting, fishing, going to concerts, and was a friend to many.

15. On the evening of Saturday, December 21, 2019, Ms. Boyer was arrested and brought to the Monroe County Jail in Sparta, Wisconsin.

16. As Ms. Boyer was being admitted to the Jail, staff at the jail filled out an intake form to assess her medical condition.

17. Ms. Boyer had suffered from cancer as an infant, and the resulting care and surgeries had led to numerous, serious medical problems. She told the Jail's staff about her medical history. She explained that she had congestive heart failure. She also told them that she had high blood pressure and asthma, and that she was subject to both chemotherapy and radiation.

18. She told the staff that she took numerous medications to address her medical conditions, including medications to regulate her blood pressure. She reported that she did not have most of those medications with her. However, Ms. Boyer gave jail staff the name of her pharmacy, her primary care physician, and her local clinic. Her clinic was part of the regional Gunderson health system.

19. In short, the Jail's staff learned that Ms. Boyer had several very serious medical conditions, that she took numerous medications to address those conditions, and that she did not have those medications with her.

20. This information called for immediate medical attention. But nothing was done. Defendant Amber Fennigkoh, who was a registered nurse and worked at the Jail, participated in Ms. Boyer's intake. Ms. Fennigkoh had been told by the arresting officer that Ms. Boyer's situation presented "a medical mess," or words to that effect, and that Ms. Boyer had a long history of medical conditions. Instead of taking action to ensure that Ms. Boyer's obvious health needs were addressed, Ms. Fennigkoh, whose shift was ending, took no meaningful action. She

left the Jail, and told the staff to call Defendant Lisa Pisney, an on-call nurse practitioner employed by ACH.

21. The Jail staff called Ms. Pisney and relayed what they had learned during intake. Ms. Pisney did nothing. She did not instruct Jail staff to ensure that Ms. Boyer had the medications she needed. She did not contact Ms. Boyer's physician or the Gunderson health system to identify Ms. Boyer's precise medical conditions, her prescriptions, or the risk of going without her medications. And she did not contact a physician to determine whether a person suffering from congestive heart failure and high blood pressure could safely be denied her medications for any period, or what effect abrupt withdrawal from multiple, unknown medications might have on a person with Ms. Boyer's conditions. Instead, she told the Jail's staff to wait until Monday, and then contact Ms. Boyer's pharmacy to see what medications she was taking. Ms. Boyer was admitted to the Jail.

22. It was obvious even to a lay person that Ms. Pisney's instructions were reckless and put Ms. Boyer's life in imminent danger, but the Defendant Does 1-3 and Defendant Danielle Warren, who were on duty, aware of Ms. Boyer's medical condition, and who communicated with Ms. Pisney at the time, failed to intervene to secure appropriate medical care for Ms. Boyer.

23. On the following day, Sunday, December 22, Ms. Boyer developed high blood pressure, which remained high all day. She also developed pain and other symptoms indicative of Angina, which indicated the possibility of heart attack and is described below.

24. The Jail did not employ a nurse on Sundays, and instead left care up to non-medical jail staff. Defendant Does 1-3 are Jail staff who "cared" for Ms. Boyer that Sunday.

5

25. Does 1-3 were aware that Ms. Boyer was suffering high blood pressure and symptoms of Angina, that she had been designated as having special medical needs, that she had congestive heart failure, and that she did not have her prescribed medications for these serious conditions. But they did not take the necessary action to ensure that Ms. Boyer received prompt medical attention for her emergent symptoms.

26. Finally, at 4:00 p.m. on Sunday, Defendant Does 1-3 alerted Ms. Fennigkoh to Ms. Boyer's condition. Ms. Fennigkoh, who happened to be in the Jail on a contract assignment to treat a particular detainee, was made aware that Ms. Boyer had suffered from high blood pressure all day. And from the intake the day before, Ms. Fennigkoh knew both that Ms. Boyer suffered from congestive heart failure, and that she did not have the medications she had been prescribed for this and other serious medical conditions.

27. Despite this knowledge, Ms. Fennigkoh did not contact Ms. Boyer's doctor or the Gunderson health system to gather Ms. Boyer's prescription list or to get a list of Ms. Boyer's diagnoses. There was a hospital with a 24/7 emergency room across the street from the Jail, but Ms. Fennigkoh did not instruct the jail staff to send Ms. Boyer out for an evaluation. Instead, Ms. Fennigkoh again told the jail staff to contact Ms. Pisney, the on-call nurse.

28. Does 1-3, however, waited four more hours to contact Ms. Pisney. At this point, around 8:00 p.m., they filled out a pre-printed "chest pain" report, which gathered information about Ms. Boyer's conditions for transmission to a practitioner.

29. The information on the chest pain report was alarming. Ms. Boyer told Jail staff that she suffered from congestive heart failure, heart disease, high blood pressure, and asthma. She told them that she was on multiple heart medications. These included Lisinopril (an ACE inhibitor that works by relaxing blood vessels so blood can flow more easily and is used to treat

6

both high blood pressure and heart failure), Amlodipine (a channel blocker that helps blood flow more easily and is used to treat high blood pressure and heart failure), and Coreg (another drug used to treat both high blood pressure and heart failure)—none of which she had received at the Jail.

30. Ms. Boyer told Jail staff that the pain had been on and off all day but by the evening, had become constant. She reported that the pain was achy and stabbing, and that it was emanating from underneath her left shoulder and her left breast and rib area. These are signs of Angina, which occurs when the heart muscle is not receiving enough oxygen in the coronary artery blood supply. It is the precursor to a heart attack. She also told them that she had been suffering nausea—another sign of Angina. And she told them that she was short of breath and dizzy—yet more signs of Angina.

31. In short, in response to every question asked of her by Jail staff about her chest pain, Ms. Boyer gave an alarming answer indicating that she was in imminent danger of cardiac arrest. Indeed she told staff that she had experienced these symptoms before, and when that had occurred, she had been treated emergently.

32. Even if the lay person does not know of the medical term "Angina" or its precise relationship to a heart attack, it was obvious to a lay person that the symptoms Ms. Boyer was describing indicated an emergent medical condition that required emergency medical attention.

33. After completing the pre-printed "chest pain" report, Jail staff contacted Ms. Pisney and relayed the information they had learned.

34. Ms. Pisney knew that chest pain, accompanied by the other symptoms that Ms. Boyer had reported, was an emergent medical issue that required immediate evaluation and treatment by medical staff. Ms. Pisney further knew that Ms. Boyer had been prescribed multiple

medications for her heart condition, none of which she had access to since her admission to the Jail.

35. Despite this knowledge, Ms. Pisney failed to take (or instruct Jail staff to take) any meaningful response to Ms. Boyer's medical emergency. She did not instruct the Jail staff to transport Ms. Boyer to the emergency room across the street from the Jail. Instead, she told them to give Ms. Boyer the cheapest possible "remedy"—an over-the-counter dose of Aspirin—and call back if her vital signs changed.

36. It was obvious that Ms. Pisney's instructions were incorrect and reckless, but the Defendant Does 1-3 and Defendant Shasta Parker, who were on duty, aware of Ms. Boyer's medical condition, and who communicated with Ms. Pisney at the time, failed to intervene to secure appropriate medical care for Ms. Boyer.

37. A few hours later, Ms. Boyer suffered cardiac arrest. She was transported via helicopter to a regional medical center in LaCrosse, Wisconsin, but could not be revived. She died on December 27, 2019.

## COUNT I
## 42 U.S.C. § 1983 – DENIAL OF MEDICAL CARE
## (ALL DEFENDANTS)

38. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

39. In the manner described more fully above, Defendants were aware of Christine Boyer's medical needs and the seriousness of her medical needs, and knew the risk of harm to Ms. Boyer if she did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide her with proper medical care or access to medical care in violation of the United States Constitution.

40. As a result of Defendants' unjustified and unconstitutional conduct, Ms. Boyer experienced injuries, including but not limited to pain, suffering, emotional distress, and death.

41. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Ms. Boyer's rights.

42. Alternatively, Defendants were deliberately indifferent to Ms. Boyer's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or reckless indifference to Ms. Boyer's health and safety.

43. Ms. Boyer's injuries, including but not limited to pain and suffering, emotional distress, and death were proximately caused by the actions of Defendants.

44. Ms. Boyer's injuries were also proximately caused by the policies and practices of Defendant ACH.

45. Prior to and during the events giving rise to Plaintiffs' Complaint, ACH maintained policies and practices pursuant to which detainees like Ms. Boyer with serious medical needs were routinely denied medical care and access to medical care.

46. Specifically, there exist policies and widespread practices within the facilities at which ACH is contracted to provide medical care, including the Monroe County Jail, pursuant to which detainees receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which (1) healthcare staff commonly disregard reports by patients of objectively serious medical needs; (2) healthcare staff refuse to provide adequate treatment to patients complaining of serious medical conditions or in need of medications; (3) healthcare staff fail to ensure continuity of care among medical and correctional staff; (4) employees prioritize profits and maintaining a competitive edge as a low-cost vendor at the expense of constitutionally adequate care; (5) inadequate levels of health care staffing are provided,

including inadequately qualified staff; and (6) healthcare staff fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper.

47. These policies and practices were allowed to flourish because ACH, which directs the provision of healthcare services at numerous jails including the Monroe County Jail, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, ACH violated Ms. Boyer's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

48. The above-described policies and practices were able to exist and thrive because ACH was deliberately indifferent to the problem, thereby effectively ratifying it.

49. ACH also acted to violate Ms. Boyer's constitutional rights through the actions and failures to act by individuals with final policymaking authority for ACH.

50. Ms. Boyer's injuries were additionally proximately caused by the policies and practices of the Monroe County Sheriff's Office, which was overseen by Defendant Hendrickson.

51. Prior to and during the events giving rise to Ms. Boyer's injuries in this case, the Sheriff's Office and Defendant Hendrickson maintained policies and practices pursuant to which persons in Ms. Boyer's position are denied medical care for serious medical conditions.

52. Among other things, the Sheriff's Office and Defendant Hendrickson do not employ medical staff at the Jail on weekends, and there is no provision for in-person medical evaluations during those periods, even for emergent conditions such as chest pain.

53. The Sheriff's Office and Defendant Hendrickson additionally fail to train its staff to identify emergent conditions and contact medical personnel or to seek outside medical help immediately.

54. Furthermore, by written policy, which is overseen by Defendant Hendrickson, the Sheriff's Office does not permit jail staff to make emergency room referrals for serious conditions like those faced by Ms. Boyer. Instead, it requires Jail staff to call an off-site nurse employed by ACH, even when emergency help is available just across the street and the need for such help is obvious to even a lay person. On information and belief, this prohibition does not exist as the result of medical judgment, but rather as a means, advertised by ACH, of managing the Sheriff's legal liability for care.

55. The above-described policies and practices were able to exist and thrive because the Sheriff's Office and Defendant Hendrickson were deliberately indifferent to the problem, thereby effectively ratifying it.

56. The Sheriff's Office also acted to violate Ms. Boyer's constitutional rights through the actions and failures to act Defendant Hendrickson and other individuals with final policymaking authority for the Sheriff's Office.

57. Ms. Boyer's injuries were proximately caused by the policies and practices of the Monroe County Sheriff's Office and Defendant Hendrickson.

58. Ms. Boyer's injuries were caused by employees of the Monroe County Sheriff's Office and ACH, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described above.

## COUNT II
## 42 U.S.C. § 1983 – FAILURE TO INTERVENE
### (DEFENDANTS PISNEY, FENNIGKOH, WARREN, PARKER, AND DOES 1-3)

59. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

60. As described more fully herein, Defendants Pisney, Fennigkoh, and Does 1-3 had reasonable opportunities to prevent the violation of Ms. Boyer's constitutional rights as set forth above had they been so inclined, but they failed to do so.

61. Defendants' failures to act were intentional, and were objectively unreasonable and/or done with reckless indifference to Ms. Boyer's rights.

62. As a direct and proximate result of these failures, Ms. Boyer experienced physical and emotional pain and suffering, and eventually death.

## COUNT III
## MEDICAL MALPRACTICE
## (DEFENDANTS PISNEY AND FENNIGKOH)

63. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

64. As described more fully herein, Defendants Pisney and Fennigkoh both owed Ms. Boyer a duty of care similar to medical professionals with similar qualifications.

65. As described more fully herein, Ms. Pisney and Ms. Fennigkoh breached that their duty of care to Ms. Boyer.

66. As a proximate result of these breaches, Ms. Boyer was injured, suffered pain and emotional damage, and died.

## COUNT IV
## SURVIVAL
## (ALL DEFENDANTS)

67. In the manner described more fully above, Defendants' wrongful acts and omissions ultimately caused the death of Ms. Boyer. In the interim, before she ultimately died, Ms. Boyer suffered "other damage" to her person pursuant to Wis. Stat. § 895.01(1)(am).

68. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

69. As a result of these actions, Ms. Boyer suffered severe injuries, including physical pain, emotional distress, and ultimately death.

70. This Count is brought by the Estate of Christine Boyer, by personal representative Greg Boyer.

## COUNT V
## WRONGFUL DEATH
## (ALL DEFENDANTS)

71. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

72. In the manner more fully described above, the defendants negligently, recklessly, and willfully caused the death of Ms. Boyer. Ms. Boyer therefore had (as alleged in Counts I – III above) a valid claim for damages against the defendants at the time of her death.

73. As a consequence, Ms. Boyer's husband, Greg Boyer, has suffered, and will continue to suffer, significant emotional distress and harm, including but not limited to the loss off society and companionship with Ms. Boyer.

74. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

75. This Count is brought by the Estate of Christine Boyer, by personal representative Greg Boyer, and by Greg Boyer, on his own behalf.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

76. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

77. In the manner described more fully above, by causing the death of Christine Boyer, the Defendants intended to cause both physical and emotional distress.

78. In so doing, the Individual Defendants' conduct was extreme and outrageous and caused Ms. Boyer severe, disabling physical distress, emotional distress, and untimely death.

79. The Individual Defendants' conduct also imposed harm on Plaintiff Greg Boyer, who suffered, and continues to suffer, severe emotional harm on account of the Individual Defendants' conduct.

80. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

81. This Count is brought by the Estate of Christine Boyer, by personal representative Greg Boyer, and Greg Boyer, on his own behalf.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

82. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

83. In the manner described more fully above, by causing the death of Christine Boyer, the Individual Defendants negligently caused both physical and emotional distress.

84. In so doing, the Individual Defendants' conduct was extreme and outrageous and caused Ms. Boyer severe, disabling physical distress, emotional distress, and ultimately death.

85. The Individual Defendants' conduct also imposed harm on Plaintiff Greg Boyer, who suffered, and continues to suffer, severe emotional harm on account of the Individual Defendants' conduct.

86. The misconduct described in this Count was negligent, willful, and undertaken with reckless indifference to the rights of others.

87. This Count is brought by the Estate of Christine Boyer, by personal representative Greg Boyer, and Greg Boyer, on his own behalf.

## COUNT VIII
## STATE LAW INDEMNIFICATION
## (MONROE COUNTY SHERIFF'S OFFICE)

88. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

89. During all times relevant to this complaint, Defendant Does 1-3 and Defendants Hendrickson, were employees of the Monroe County Sheriff's Office, who acted within the scope of their employment in committing the acts described herein.

90. Wisconsin law, Wisc. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable within the scope of their employment activities.

**WHEREFORE**, Plaintiff Greg Boyer, as Administrator of the Estate of Christine Boyer, and on his own behalf, hereby respectfully requests that this Court enter a judgment in his favor against each of the Defendants named herein, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems just and appropriate

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated:  December 21, 2020                         By: _Sarah C. Grady_

Sarah C. Grady
Arthur Loevy *pro hac vice forthcoming*
Stephen H. Weil *pro hac vice forthcoming*
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900