UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**GREGORY BOYER,**
as Administrator of the
Estate of Christine Boyer,
and on his own behalf,

       Plaintiff,

v.                                                                             Case No. 20-CV-1123

**ADVANCED
CORRECTIONAL
HEALTHCARE, INC.,** *et al.***,**

       Defendants.

---

**DEFENDANTS ADVANCED CORRECTIONAL HEALTHCARE, INC., LISA PISNEY, AND AMBER FENNIGKOH'S BRIEF IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENAS TO DEFENSE LAW FIRMS**

---

### INTRODUCTION

Not satisfied with Advanced Correctional Healthcare, Inc.'s response to its overly broad and burdensome Rule 34 discovery requests seeking nearly every conceivable pleading, discovery document and medical record in twenty-four (24) lawsuits that bear no relationship to this one, plaintiff issued subpoenas to twelve (12) non-party law firms that have represented ACH in eight (8) states seeking their case files.[1] The subpoenas on ACH's defense counsel are, like the original Rule 34 request, a quintessential fishing expedition: expansive, unfocused trolling with little consideration for the burdens imposed on the responding firms and ACH, the unacceptable risk of

---

[1] Plaintiff apparently issued, at minimum, fifteen (15) subpoenas total around March 22, 2022. However, some firms were served with two subpoenas issued that same day, with one including the protective order. In addition to the subpoenas issued to firms that have represented ACH, plaintiff issued subpoenas to the Indiana Attorney General and two firms that have no relationship to ACH. (Knott Decl., Exs. A-P). Plaintiff previously subpoenaed a law firm that represented a plaintiff in a lawsuit against ACH. (*Id*. at Ex. Q).

1

disclosure of private and privileged information from the other lawsuits, and the pittance of pertinent information that the expensive, time-consuming process could yield. The directing of subpoenas to your opponent's lawyers crosses a line that should not be crossed without very careful thought and consideration. Respectfully, these subpoenas are not well considered. They are procedurally deficient, improper, unnecessary, vastly over broad, and issued without regard for the burden and costs imposed on twelve (12) non-party law firms and ACH's costs necessitated in seeking to quash the subpoenas.

The subpoenas are both procedurally invalid and substantively improper for the reasons set forth below. They should be quashed pursuant to Fed. R. Civ. P. 26 and 45 and ACH's costs in bringing this motion awarded.

## ARGUMENT

A party owes a responsibility to tailor a subpoena request toward relevant, admissible evidence and to consider the time and costs borne by the responding party in relationship to the value. Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*.")(emphasis supplied). Plaintiff here seeks the gamut of defense counsel's files, indiscriminately asking for both pleadings available in the public record and highly confidential, privileged, and court-sealed information. (*See, e.g.,* Knott Decl., Ex. A).

The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *See Jackson v. Brinker*, 147 F.R.D. 189, 193–94 (S.D.Ind.1993) ("The scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules . . . if the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.")(internal citations omitted); Fed. R. Civ. P. 45 Advisory

Committee Note to the 1991 Amendment. The use of a subpoena is not, however, without limitation. A subpoena must be quashed if it "(iii) requires disclosure of privileged or other protected matter. . .; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The Court must also limit discovery if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive". Fed. R. Civ. P. 26(b)(2)(C)(i).

The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 543 (N.D. Ind. 1991). The 2015 Amendments to Fed. R. Civ. P. 26 were intended to "restor[e] the proportionality factors to their original place in defining the scope of discovery." *See* Fed. R. Civ. P. 26 (Notes of Advisory Committee on Rule - 2015 Amendment). Under Rule 26(b)(2), the Court must weigh the burden or expense of proposed discovery and its likely benefit by taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Simon Property Group L.P. v. mySimon, Inc.,* 194 F.R.D. 639, 640 (S.D. Ind. 2000).

> [T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Fed. R. Civ. P. 26 (Notes of Advisory Committee on Rule – 1983 Amendment)(underlining supplied).

Respectfully, serving fifteen (15) subpoenas on your adversary's lawyers because you are dissatisfied with a Rule 34 response is a misuse of discovery as a "tactical weapon[]" in violation of the spirit of the rules. *See Hickman v. Taylor*, 329 U.S. 495, 516, 67 S. Ct. 385, 91 L. Ed. 451

(1947)(noting that discovery against attorneys regarding the litigation is disruptive and causes "the standards of the profession [to] suffer").

Discovery should not be employed to burden the other side in either complying or contesting the requests. These subpoenas are invalid and unenforceable on their face, suggesting they were intended to gain leverage against ACH by imposing a burden on uninvolved law firms. They are also indiscriminate and over broad, suggesting they were interposed to maximize leverage by increasing the responding firms' burdens. The subpoenas should be quashed, and costs awarded.

## SUBPOENAS TO LAW FIRMS

Plaintiff alleges in his complaint that ACH "maintained policies and practices pursuant to which detainees like Ms. Boyer with serious medical needs were routinely denied medical care and access to medical care." (ECF No. 26 at ¶ 45). Defendants have discerned their *Monell* theory is that ACH allegedly maintains a "policy" of "not sending inmates out for emergency care."[2] Defendants are confident the Court will dismiss plaintiff's claim, as Judge Stadtmueller did in another case prosecuted by the Loevy & Loevy firm, where he observed evidence of other constitutional violations supporting a pattern of practice claim <u>must be similar to the plaintiff's injury</u>. *See Terry v. County of Milwaukee*, No. 17-CV-1112-JPS, 2018 U.S. Dist. LEXIS 93298, at *18-22 (E.D. Wis. June 4, 2018). Plaintiff cannot "splatter-paint a picture of scattered violations", like those in these unrelated cases. *Id*. at *21-22. Plaintiff cannot lump together his claim with any other claim involving "medical needs being 'simply ignored.'" *Id*. at *19. This "10,000-foot observation. . . was not enough to bind them together into a pattern for *Monell*

---

[2] Plaintiff does not allege ACH had an express policy of not sending inmates for appropriate care. (ECF No. 26, *passim*.). ACH, in fact, requires that every nurse, doctor and mid-level provider acknowledge in writing their responsibility to send inmates to a hospital if a need for emergency care is perceived. (Knott Decl. Ex. R).

4

purposes." *Id*. <u>Evidence of general "medical issue" claims in other jails, and in almost every instance in other states, cannot support plaintiff's *Monell* claim</u>. *See Id*. at *22; *see also Thomas v. City of Markham*, Ill., No. 16-cv-8107, 2017 U.S. Dist. LEXIS 160635, 2017 WL 4340182, at *4 (N.D. Ill. Sep. 29, 2017) (dismissing *Monell* claim because prior lawsuits identified by plaintiff did not describe incidents that are sufficiently similar to constitute a pattern. "Allegations of general past misconduct or allegations of dissimilar incidents are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences.").

The subpoenas are a blunderbuss attempt to locate instances where inmates have alleged ACH employees made the wrong decision about sending inmates out for hospital care. No time or geographic limits appear to have been considered in targeting the subpoenas, and the inmate medical issues, health care providers, treatment plans and patient outcomes vary widely in the twenty-four (24) lawsuits.[3] They do nothing to support a claim that ACH had an unconstitutional custom, policy or practice at the Monroe County Jail relevant to Ms. Boyer's care in 2019.

---

[3] *Jefferson v. Madison County*, 14-CV-1959 (N.D. Ala.): Claims related to alleged bowel obstruction.

*Foster v. ACH, Inc.*, 16-CV-521 (N.D. Ala.): Claims related to treatment for methadone withdrawal leading to strokes.

*Hunter v. Jefferson County*, 16-CV-1521 (N.D. Ala.): Claims related to tasing by officers and alcohol withdrawal.

*Buckles v. Thompson*, 1:12-CV-1194 (C.D. Ill.): Claims related to alleged delay in administering HIV medicine.

*Quinn v. Sangamon*, 14-CV-3260 (C.D. Ill.): Claims related to heart attack after patient sent to jail from the ER with diagnosis of acid reflux.

*Estate of Tammy Perez v. Morgan County Sheriff*, 16-CV-645 (S.D. Ind.): State law claims only related to death of heroin addict with a rare condition and going through withdrawals. ACH did not employ nurses at this jail.

*Day v. Hendricks County Sheriff*, 1:08-CV-392-WTL-JMS (S.D. Ind.): Claims related to seizure days after plaintiff arrived at the jail.

*Glover v. Rogers*, 15-CV-734 (S.D. Ind.): Claims related to leukemia. ACH was dismissed.

*Vest v. Al-Shami*, 4:12-CV-39-SEB-TAB (S.D. Ind.): Claims related to spinal cord injury.

The subpoenas were sent to firms in Alabama, Indiana, Illinois, Kentucky, Ohio, Missouri, Tennessee, and Wisconsin. (Knott Decl., Exs. A-O). They relate to lawsuits filed in those states between 2008 and 2020 involving medical issues (per public pleadings) that range from asthma to rheumatoid arthritis to pregnancy. Only one of the subpoenas concerns care rendered by ACH in the State of Wisconsin. (*Id.*, Ex. O). None of the subpoenas could yield evidence of policies or practices *at the Monroe County Jail* or alleged failures by the ACH staff at that facility.

---

*Wethington v. Tippecanoe County Sheriff*, 4:10-CV-84-WCL-PRC (N.D. Ind.): Summary judgment granted for defendants regarding claims of acute renal failure due to sepsis.

*Burden v. Grant County*, 14-CV-54 (E.D. Ky.): Claims related to possible overdose death hours after arrival at jail.

*Messamore v. Hopkins*, 19-CV-36 (W.D. Ky.): Claims related to cardiac arrest.

*Ivey v. Audrain County*, 17-CV-82 (E.D. Mo.): Claims related to plaintiff's cardiac arrest from substance withdrawal. Cause of death was acute asthma.

*Nugent v. ACH, Inc.*, 18-CV-2042 (E.D. Mo.): Claims related to acute pericarditis secondary to appendicitis.

*Snapp v. Heiss*, 14-CV-313 (W.D. Mo.): Claims related to treatment of paraplegic plaintiff with several chronic medical conditions.

*McMillon v. Cole County*, 15-CV-4277 (W.D. Mo.): Claims related to stillborn birth about a week after arrival at jail.

*Harnden v. Cass County*, 4:10-CV-263-NKL (W.D. Mo.): Claims related to jail suicide.

*Buroker et al. v. Summit County*, 5:11-CV-659-DDD (N.D. Ohio): Claims involving death of extremely premature child. Claims voluntarily dismissed.

*Watts v. Summit County*, 5:13-CV-549-BYP (N.D. Ohio): Claims related to peptic ulcer disease.

*Scarbrough v. County of Summit*, CV-2013-05-2404 (Ct. Common Pleas. Summit Cnty., Ohio): Claims related to peritonitis and a perforated marginal gastric ulcer.

*White v. Henderson County*, 16-CV-1020 (W.D. Tenn.): Claims related to cardiac issues with plaintiff with mental health issues.

*Blevins v. Scott County*, 17-CV-348 (E.D. Tenn.): Dismissed with prejudice.

*Pemberton v. Scott County*, 20-CV-2 (E.D. Tenn.): Claims related to endocarditis from MRSA infection.

*Williams v. Racine County*, 18-CV-1020 (E.D. Wis.): Claims related to plaintiff's treatment of rheumatoid arthritis. ACH was voluntarily dismissed.

The types and categories of documents sought for each of the twenty-four (24) cases are expansive. Each firm is commanded to produce "Case Documents" from their litigation files, defined identically in each subpoena as follows:

> "Case Documents" refers to the following documents relating to a lawsuit, excluding documents that are privileged attorney-client communications or attorney work product:
>
> a. All documents filed on the court's docket in the case, including all documents filed under seal;
> b. All documents filed with the Court in the case, including all documents filed under seal;
> c. All written discovery requests and written discovery responses;
> d. All documents produced or gathered pursuant in discovery, including subpoenas and expert materials;
> e. All deposition transcripts;
> f. All documents reflecting settlements or judgments in the case, by any party;
> g. All exhibits (including demonstrative exhibits and animations) offered during trial or hearing, or submitted at the to the court for pretrial / motion *in limine* review; and
> h. All video or audio recordings of depositions.

"Even if the information is relevant, discovery is not allowed if the person seeking discovery fails to show their need for the information, or compliance with the request is unduly burdensome or oppressive, or where the harm of disclosure outweighs the need of the person seeking discovery of the information." *Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534 (C.D. Ill.); *citing* Fed. R. Civ. P. 26(b)(1); *American Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 739-42 (Fed. Cir. 1987). Here, every category of litigation document and work product conceivable to plaintiff's counsel was included in the definition without regard to public availability, costs to the defendant, privileges and confidentiality, or the exceedingly small possibility that relevant materials may be found. It is difficult to discern, for example, the value plaintiff could gain from materials submitted for a motion *in limine* in a trial in Alabama or

plaintiff's use for video and audio recordings from that litigation in Ms. Boyer's case. The requests are vastly overbroad.

Based on ACH counsel's communications with representatives of the subpoenaed firms, the existence of the files in their respective archives is uncertain and, in most cases, would require IT consultations to recover from archive. Some firms' archiving process commingles the materials. All firms reported significant concerns for inadvertent disclosure of privileged employment, medical and attorney-client records.

## MOVANTS' STANDING

Ten of the twelve firms that represented ACH in other matters and have received subpoenas have consented pursuant to Rule 45(f) to having this Court address their and ACH's objections. (Knott Decl., Ex. S-AA)[4]. As the Committee Notes recognize, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 (Committee Notes – 2013 Amendment). These subpoenas were served in eight (8) states and twelve (12) federal districts. This Court's management is required.

ACH, moreover, has standing to contest the subpoenas. "The law is clear that generally, a party does not have standing to quash a subpoena to a non-party. Instead, it is usually up to the non-party to bring its own motion to quash." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). "However, a party who has a personal right or privilege with respect to the

---

[4] General counsel for Reminger, Co. LPA – Cleveland stated that as of April 8, 2022, the firm had not been served with a subpoena. Additionally, we are unaware if Spangler, Jennings, & Dougherty, P.C. were successfully served at this time. We would ask to reserve the right to communicate with ACH counsel in those matters if service is successful regarding the consent to transfer the subpoenas into the Western District of Wisconsin. (Knott Decl., ¶ 8).

8

subject matter requested in the subpoena may also move to quash the subpoena." *Spuhler v. STTE Collection Servs.*, No. 16-cv-1149, 2017 U.S. Dist. LEXIS 233399, at *3 (E.D. Wis. April 14, 2017); *Design Basics LLC v. Campbellsport Bldg. Supply, Inc.*, No. 13-C-560, 2014 U.S. Dist. LEXIS 158944, 2014 WL 5818756, at *2 (E.D. Wis. Nov. 10, 2014). ACH clearly has personal rights and privileges at stake. Its employees were involved in the underlying suits, its attorneys committed on ACH's behalf to protect patient and employee confidentiality, legal privileges, if inadvertently waived in the production, are ACH's, and plaintiff has imposed a disproportionate expense on ACH (and its retained counsel) for no valid purpose.

### I.  THE SUBPOENAS ARE UNENFORCEABLE ON THEIR FACE.

"A subpoena may command (A) production of documents, electronically stored information, or tangible things at a place *within 100 miles of where the person resides, is employed, or regularly transacts business in person.*" Fed R. Civ. P. 45(c)(2)(A). Each of the subpoenas commands an appearance and production of documents at Loevy & Loevy, 311 N. Aberdeen Street, Chicago, IL 60607, "to permit inspection [and] copying." (Knott Decl. ¶ 3, Ex. A-O). Other than the offices of Leib Knott Gaynor LLC, none of the subpoenaed firms are within 100 miles of the location where a representative of the firm's appearance is commanded to produce files.[5] *Id*.

---

[5] Via Google Maps, the following are the distances from the offices of Loevy & Loevy to each of the Firms:
Leib Knott Gaynor LLC – 90.4 Miles
Indiana Attorney General – 184 Miles
Howell & Fisher, PLLC – 477 Miles
Eckenrode Maupin – 313 Miles
Dinsmore Shohl LLP – 316 Miles
Bleeke Dillon Crandall PC – 182 Miles
Bell, Orr, Ayers & Moore, PSC – 413 Miles
Spangler, Jennings & Dougherty, P.C. - 181 Miles
Reminger Co., LPA – 346 Miles
Quinn Johnson Henderson & Pretorius & Cerulo (Springfield) - 201 Miles
Quinn Johnson Henderson & Pretorius & Cerulo (Peoria) - 166 Miles
Porterfield Harper Mills Motlow & Ireland, PA – 675 Miles
O'Bryan, Brown & Toner (Louisville) - 300 Miles
London & Amburn, P.C. - 544 Miles
Law Office of Meredith L. Moser – 527 Miles

"A non-party witness can be compelled by subpoena to travel up to 100 miles." *Landry v. Green B. & W. R. Co.*, 121 F.R.D. 400, 401 (E.D. Wis. 1988). Plaintiff also declined to reimburse the non-party's for travel as required by Rule 45(b)(1). Plaintiff's subpoenas are facially invalid and should be quashed for that reason. *See Schreiber Foods, Inc. v. Indirect Purchaser Plaintiffs*, No. 12-mc-00050, 2012 U.S. Dist. LEXIS 113536, at *6 (E.D. Wis. Aug. 10, 2012)(service of facially invalid subpoena commanding appearance beyond geographic limit is jurisdictional defect).

It is difficult to believe plaintiff's counsel was unaware the subpoenas were facially invalid at issuance. The subpoenas are clearly a tactic intended to exert pressure on ACH in this litigation, to drive up fees, and to burden defense counsel. Respectfully, ACH and its counsel should not bear the expense in time and attorneys' fees responding to such discovery tactics.[6] Its costs in responding to this matter should be awarded.

### II. PLAINTIFF SEEKS PRIVILEGED AND CONFIDENTIAL DOCUMENTS.

In addition to procedural defects, the subpoenas are substantively improper. Plaintiff's subpoenas expressly encompass confidential documents protected by court orders, federal and state statutes, and, undoubtedly, written agreements and commitments among the attorneys and parties in those cases. The "Case Documents" plaintiff seeks include all documents filed on the court's docket in the underlying cases, including "all documents filed under seal." (*See, e.g.*, Knott Decl., Ex. A at 4). No responsible attorney, responding to a subpoena, would violate a court order sealing information and documents. Plaintiff would shift responsibility for analyzing the involved courts' sealing orders, as well as every other concern for violations of privacy statutes and privilege

---

[6] The Loevy & Loevy firm issued 42 subpoenas to ACH's clients in another matter it prosecuted, creating significant burdens and costs on third parties. *Piercy v. Wilhemi*, Case No. 14-CV-7398 (N.D. Ill).

concerns, onto the responding law firms. The attorney time lost to this endeavor would be extensive. Plaintiff declined to offer even a mileage reimbursement, much less the actual cost in lost attorney, paralegal and staff productivity created by his requests.[7]

In seeking "all documents produced or gathered in discovery" plaintiff would compel the law firms to produce countless employment files and medical records obtained in the representation of ACH in other matters. Plaintiff is indifferent to those parties' privacy interests. Those uninvolved parties whose records defense counsel may have in their possession did not waive their privacy beyond the scope of their own lawsuits and are not represented here. The Court should not disregard dozens of uninvolved patients' privacy rights to facilitate plaintiff's unfettered access. *See Bond v. Uteras*, 585 F.3d 1061, 1075 (7th Cir. 2009)("That the court's discovery processes and rules are used to require litigants to produce otherwise private information to an opposing party is not enough to alter the rights of the general public.") Nor should defense counsel bear the burden of analyzing the protective orders, waivers and agreements by which they obtained those records to assess risks of improper disclosure.

Similarly, the subpoenas seek "[a]ll documents reflecting settlements or judgments in the case, by any party." Settlement documentation is most often, in the context of civil litigation, confidential as a condition of settlement. Mutual agreements are signed promising confidentiality. Settlement discussions are not admissible in evidence, FRE 408, and the probative value of such documents is far outweighed by the litigants' privacy interests and the undermining of the settlement process. Rule 408 is a statement of policy encouraging settlements; it undermines that policy to require the firms that bargained for and promised its clients confidentiality to share settlement discussions and agreements. *See Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d

---

[7] ACH counsel inquired whether plaintiff would reimburse ACH or the responding firms for lost productivity; counsel declined. (Knott Decl., ¶ 9).

923, 928-29 (7th Cir. 2004)("That protection encompasses weighing the need for the material subpoenaed against the burden involved in its production. Burden in this context means more than mere administrative hardship. It encompasses the interests that enforced production would compromise or injure.")

In addition, attorney litigation files are obviously laden with attorney-client communications, notes, and attorney work product. Although the subpoenas offer the caveat that attorney-client privileged "communications" or work product material are excluded, the burden remains on the responding firms to remove client notes, analysis, privileged notes on pleadings, drafts, and metadata. The risk of inadvertent disclosure is high and borne entirely by the responding law firms.

Plaintiff is not entitled to his adversary's counsel's case files. *See State ex rel. Dudek v. Circuit Court*, 34 Wis.2d 559, 150 N.W.2d 387, 409 (1967) (commenting that work product requests are an effort "to rifle an attorney's mind and file.") When seeking privileged or confidential information, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Wright Med. Tech., Inc. v. Orthopedic Sys.*, No. 06-CV-931, 2007 U.S. Dist. LEXIS 107914, at *14 (E.D. Wis. March 28, 2007); *Greater Rockford Energy & Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534 (C.D. Ill. 1991) (*quoting Litton Industries v. Chesapeake & Ohio Ry.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990)). Plaintiff cannot meet that burden here. This endeavor is an unguided fishing expedition; the privacy interests and risks of improper disclosures far outweigh any evidence plaintiff could even arguably obtain.

### III. THE RESPONDING FIRMS' BURDEN IS DISPROPORTIONATE TO THE PROBATIVE VALUE OF CASE DOCUMENTS.

"The Court must consider a number of factors in determining whether a subpoena is unduly burdensome, including nonparty status." *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-cv-00268-JD-CAN, 2014 U.S. Dist. LEXIS 204449, at *9-10 (N.D. Ind. Nov. 20, 2014); *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006). One factor is whether the requests are narrowly tailored and reasonably likely to yield probative evidence. *See Armour v. Country Club Hills*, Case No. 11 C 5029, 2014 U.S. Dist. LEXIS 1849, 2014 WL 63850, at *7 (N.D. Ill. Jan. 8, 2014) (rejecting *Monell* claim premised on "virtually all the activities of a police department and every contact it has with the public," amounting to a "boundless" claim that was "the epitome of a fishing expedition"). Here, the burden of locating closed litigation files in archives, selecting materials responsive to plaintiff's definition of Case Documents, reviewing those materials for privileged attorney comments and metadata, and analyzing myriad privacy concerns before production is obvious. It would cost the responding firms hours and hours per case to meet the subpoenas. The value in this litigation, on the other hand, is virtually non-existent.

The only defining characteristic of the lawsuits for which plaintiff has subpoenaed the non-party firms is that they were filed against ACH. None of the cases involves Monroe County Jail, Nurse Fennigkoh or Nurse Practitioner Pisney, and only one case involves a Wisconsin jail. The practices and outcomes at other facilities in prior years is not probative of practices at Monroe County Jail. In a prior lawsuit against ACH the Seventh Circuit Court of Appeals stated, "[I]n order to maintain an action against Advanced Correctional Health Care, Inc. or Peoria County, the plaintiff must show that *PCJ's [Peoria County Jail's] healthcare policy* was a 'moving force' behind Taylor's death or needless suffering." *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010)

13

(Emphasis added; rejecting a *Monell* claim against ACH). Evidence of care in another state, even if demonstrably deficient, is not probative of Monroe County Jail practices in 2019.

While ACH recognizes plaintiff's burden in establishing a *Monell* violation is considerable, it serves neither side to allow plaintiff to proceed through discovery on a theory as vaguely defined as "refusing to send inmates to the hospital." A healthcare provider's discretionary decision to send an inmate to the hospital is not a corporate policy. To support a *Monell* claim, the alleged pattern of unconstitutional conduct must consist of "*similar* constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)(affirming Rule 12(c) motion where plaintiff did not allege bad acts "similar to those complained of here"). Every § 1983 claim against a health care provider involves alleged refusal to provide treatment. There must some commonality that suggests a systemic problem so pervasive that the entity consciously chose to ignore it.

Available public documents demonstrate the lawsuits for which plaintiff has subpoenaed ACH's defense counsel's litigation files arise out of diverse and varied medical circumstances. *See fn. 3, supra.* None bears sufficient similarity to Ms. Boyer's case to suggest a deficient corporate policy. *See Terry*, 2018 U.S. Dist. LEXIS 93298, at *8 (a plaintiff may not "splatter-paint a picture of scattered violations" without common characteristics).

**IV.   PLAINTIFF SHOULD NOT BURDEN THE RESPONDING FIRMS OR ACH WITH THE COST OF RETRIEVAL OF PUBLIC DOCUMENTS.**

The subpoenas request several categories of documents that should be available to the public via PACER: "[a]ll documents filed on the court's docket"; "[a]ll documents filed with the Court in the case, and [a]ll exhibits. . . offered during trial or hearing, or submitted at the [sic] to the court for pretrial / motion *in limine* review." Plaintiff's request that its adversary's law firms

14

provide publicly available pleadings at their cost is simply wrong. The request is a misuse of Rule 45.

The same principle applies to plaintiff's request for deposition transcripts and recordings. Just as court reporters appointed by the district courts, court reporters obtained for depositions "charge and collect fees for transcripts requested by the parties". 28 U.S.C. § 753(f). The defense firms and ACH paid for the transcripts and recordings in their files. Plaintiff should not undermine the reporters by requiring the firms to copy their work product. *See Tuner v. Brown*, No. 17-cv-764-jdp, 2019 U.S. Dist. LEXIS 188037, at *1 (W.D. Wis. Oct. 30, 2019) ("But I am aware of no statute or rule that gives a party the right to request a free transcript for proceedings in the district court.").

## **CONCLUSION**

Movants request that plaintiff's subpoenas (Knott Decl., Exs. A-O) be quashed. In addition, movants respectfully request that they be awarded their actual attorneys' fees associated with the motion.

Dated this 8th day of April, 2022.

**LEIB KNOTT GAYNOR LLC**

By:*/s/ Douglas S. Knott*
Douglas S. Knott, SBN 1001600
Kelly E. Lamberty, SBN 1095208
Attorneys for the ACH, Lisa Pisney
and Amber Fennigkoh
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2102
Fax: (414) 276-2140
Email: dknott@lkglaw.net
klamberty@lkglaw.net