## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

_____

**GREGORY BOYER**, as Administrator of the
Estate of Chrstine Boyer, and on his own behalf,

       Plaintiff,

v.                                    Lead Case No. 20-CV-1123

**ADVANCED   CORRECTIONAL
HEALTHCARE, INC.,** *et al.*,

       Defendants.

_____

**GREGORY BOYER**, as Administrator of the
Estate of Chrstine Boyer, and on his own behalf,

       Plaintiff,

v.                                      Case No. 22-CV-723

**USA MEDICAL & PSYCHOLOGICAL
STAFFING**, *et al.,*

       Defendants.

_____

### ACH DEFENDANTS' PROPOSAL ON POINT OF DISAGREEMENT

Defendants Advanced Correctional Healthcare, Inc., Lisa Pisney, and Amber Fennigkoh advise the Court as follows in supplementation to the Statement of Position (ECF 190) filed April 18, 2024.

1.     The Court directed the parties to confer and submit a joint proposed discovery plan related to plaintiff's Document Production Request No. 27 and "any remaining discovery needed for that request." (ECF 189 at 8). (Id.) The Court further directed that "[i]f the parties are

unable to agree as to the scope of additional discovery needed, each party may submit alternative proposals on points of unresolvable disagreement." (Id.)

2.      Plaintiff and ACH's counsel communicated regarding the scope of additional discovery related to deaths in ACH-serviced facilities on March 27 (email), April 1 (telephone), April 4 (telephone), April 5 (email), April 9 (email), April 10 (email), April 11 (telephone), April 15-17 (email), April 18 (telephone and email), April 19 (email) and April 22 (email). They have reached an unresolvable disagreement as to the scope of RFP 27 and the most efficient and least intrusive method to follow up on information provided in the ACH list of 408 cases (Exhibit 28) as referenced in the Court's Order.

3.      The Court's mandate in its March 21 order was that the parties discuss follow up to plaintiff's RFP No. 27 made necessary by ACH's disclosure of Exhibit 28. (ECF 189 at 8 ("The parties should be prepared to discuss the scope of Request No. 27 and any remaining discovery needed for that request at the pretrial conference.")).  Plaintiff's RFP 27 reads as follows:

> Documents relating to deaths from medical conditions of persons incarcerated at facilities serviced by ACH between January 1, 2011 through the present, including but not limited to medical records, death reviews, mortality and morbidity reports, investigative Documents, incident reports, and Communications. This request includes persons who died at the facilities themselves, as well as persons (like Decedent) who suffered from medical events at the facility and died after being transported out of the facility to an outside medical provider.

4.      ACH has offered an efficient means for plaintiff to access directly medical records responsive to the request. Plaintiff has unilaterally sought to conduct tangential and unnecessary discovery into ACH's confidential claims administration process and privileged information concerning pending and potential litigation claims.

5.      **ACH's Proposal**: Plaintiff claimed in its motion for sanctions that it was hindered in its attempt to locate *medical records* related to deaths of inmates in ACH-served facilities. ACH has offered access to the underlying medical records for the 408 cases referenced in Exhibit 28 provided that plaintiff would bear the cost of that effort. (Ex. A, Knott Email to Weil 4/9/24).

6.      Specifically, ACH has *provided to plaintiff a list of field identifiers* that are assigned by its third-party insurance claims administrator, Gallagher Bassett, so that plaintiff can select cases it believes may involve medical events similar to Ms. Boyer's event to support its *Monell* claim. (Id.; Ex. B, Field Codes (e.g., "Cardiac Arrest"), filed herewith). ACH would then ask Gallagher Bassett to search for and produce underlying medical records related to those claims, if they exist, provided that plaintiff would bear the reasonable cost of the search and privilege review. (Ex. A, Knott Email to Weil 4/9/24).

7.      Alternatively, ACH has offered to ask Gallagher Bassett to search its claims data using *terms of plaintiff's choosing* to identify cases that may involve medical events similar to Ms. Boyer's event. (Ex. A, filed herewith). ACH would then ask Gallagher Bassett to search for and produce underlying medical records related to those claims, if they exist, provided that plaintiff would bear the reasonable cost of the search and privilege review. (Ex. A, Knott Email to Weil 4/9/24).

8.      **Plaintiff's Response**: The parties tentatively agreed in a telephone discussion on April 4, 2024, to proceed along the course suggested above. (*See* Ex. A). One day later, however, plaintiff's counsel backed out on the parties' agreement and unilaterally issued a subpoena to Gallagher Bassett. (Ex. C, Subpoena 4/5/24; *see also* Ex. A).

9.     The unilateral subpoena to Gallagher Bassett not only violated counsel's verbal commitment to cooperate, but is also contrary to the Court's order that the parties confer and jointly propose a discovery plan or submit "alternative proposals" for going forward in the event agreement could not be reached. (ECF 189 at 8). Ignoring its duty to confer with counsel and the magistrate, plaintiff unnecessarily caused yet another expensive discovery dispute for which counsel takes no responsibility.

10.     The hurried and unnecessary resort to a subpoena after the parties had agreed to cooperate was calculated to prevent this Court's review of the parties' alternative proposals. Specifically, plaintiff sought to compel Gallagher Bassett to divulge confidential and protected claims information before this Court could address the parties' proposals.

11.     The subpoena to Gallagher Bassett is also beyond the scope of the Court's March 21 order, overbroad and unnecessary. As discussed in the Court's order, RFP No. 27 refers to "documents relating to deaths from medical conditions of persons incarcerated at facilities serviced by ACH between January 1, 2011 through the present." ACH has identified 408 death cases and offered plaintiff access to the medical records. But plaintiff refused to avail itself of this direct offer and instead has directed its subpoena at ACH's *claims management process* and privileged information regarding ACH's existing and potential claims.

12.     Plaintiff has offered no justification for unnecessarily and pointlessly forcing ACH and Gallagher Bassett to incur costs and expenses responding to a subpoena and motion to compel in Illinois. As plaintiff knows well, ACH has offered access to any records maintained by Gallagher Bassett on its behalf. Plaintiff issued a subpoena to Gallagher Bassett solely to circumvent this Court's review and to force Gallagher Bassett and ACH to incur costs unnecessarily.

13.     The Loevy firm has, once again, used legal process on a whim, thoughtlessly issuing a subpoena that would compel ACH's insurance administrator to divulge confidential and privileged data before even discussing the matter with this Court. ACH has incurred hundreds of thousands of dollars responding to plaintiff's RFP No. 27, *which is plainly and clearly objectionable on its face*. It has produced hundreds of thousands of pages of medical records of no evidentiary value to any well-framed Monell claim—all at defendants' expense.

14.     Defendants respectfully request that the Court prevent intrusion into its confidential litigation claims and further unnecessary costs by directing plaintiff to cooperate in defendants' proposal as outlined above.

15.     **Response to Plaintiff's Status Report**:  Plaintiff's counsel's report (ECF 194) to the Court is inaccurate and seeks again to impugn defense counsel.

16.     Mr. Weil falsely suggests "there were considerable delays"—impliedly caused by ACH—in "gathering [] information" responsive to RFP No. 27. (ECF 194 at 1). The statement is willfully misleading. Mr. Weil did not seek to follow up on the Court's order or RFP No. 27. Instead, Mr. Weil sought voluntary production of privileged and confidential information maintained by Gallagher Bassett and ACH that is in no way responsive to RFP No. 27.  (*See* Ex. C).

17.     Nor was there any undue delay. The parties attempted to resolve their issues through communications on March 27, April 1, April 4, April 5, April 9, April 10, April 11, April 15-17, and April 18. This followed the Court's order requiring that the parties confer and propose a discovery plan or, alternatively, detail their proposed plan if a dispute could not be resolved. (ECF 189 at 8). The fact that Mr. Weil did not get his way does not mean ACH was dilatory.

18.     ACH did not "reverse course" on an agreement reached by the parties on April 18. (ECF 194 at 1). Instead, ACH's counsel sat at his desk the evening of April 18 waiting for Mr. Weil's response to ACH's proposal. Mr. Weil was on the soccer field. ACH's counsel advised at 6:02 p.m. that if Mr. Weil could not agree to include simple language proposed by ACH, then ACH would "submit something for my clients that summarizes where we ended up on this attempt today." (Ex. D, Email Knott to Weil 4/18/24). Unlike Mr. Weil, ACH did not renege on an agreement. (*See* Ex. A). The parties could not agree on language, so ACH reported to the Court as ordered. (ECF 190).

19.     Mr. Weil then, in a childish fit of anger and misuse of process, sent an email at 9:51 p.m. requiring that Gallagher Bassett produce a witness to testify *at noon the following day*. (Ex. E, Email Weil to Knott 4/18/24).  Mr. Weil the next day unnecessarily filed suit in Illinois against Gallagher Bassett to compel a response to the subpoena. As plainly evidenced by Mr. Weil's email, the provocation for plaintiff filing suit against Gallagher Bassett was ACH reporting as required by the Court's order. (Id.)

20.     Mr. Weil falsely claims "all parties had agreed" that ACH would provide "more tracking information" before proposing a discovery schedule. (ECF 194 at 2). There is no basis for that representation. ACH did not agree to provide Gallagher Bassett's "tracking information." ACH has never used the phrase "tracking information," nor did it volunteer any such internal and privileged data. Instead, ACH has offered *direct access* to underlying medical records maintained by Gallagher Bassett if plaintiff would only use any of the alternatives for selection ACH has offered and agree to pay for its third-party discovery. (Ex. A). Mr. Weil refuses to explore a simple resolution, yet continues to impugn ACH through plainly false and misleading statements such as the above.

Dated this 24th day of April, 2024.

      **LEIB KNOTT GAYNOR LLC**


      By:*/s/ Douglas S. Knott*_____
      Douglas S. Knott, SBN 1001600
      Daniel A. Kafka, SBN 1122144
      Attorneys for the ACH, Lisa Pisney
      and Amber Fennigkoh
      219 N. Milwaukee Street, Suite 710
      Milwaukee, WI 53202
      Telephone: (414) 276-2102
      Fax: (414) 276-2140
      Email: dknott@lkglaw.net
      dkafka@lkglaw.net