UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
_____

**GREGORY BOYER,**
as Administrator of the
Estate of Christine Boyer,
and on his own behalf,

Plaintiff,

v.                                                                                         Case No. 20-CV-1123

**ADVANCED
CORRECTIONAL
HEALTHCARE, INC.**, *et al.*,

Defendants.
_____

**DEFENDANTS ADVANCED CORRECTIONAL HEALTHCARE, INC., LISA PISNEY, AND AMBER FENNIGKOH'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S THIRD AMENDED COMPLAINT**
_____

Defendants Advanced Correctional Healthcare, Inc. ("ACH"), Lisa Pisney, and Amber Fennigkoh (collectively, the "ACH defendants"), by their attorneys of record, Leib Knott Gaynor LLC, submit this reply brief in support of their motion for partial dismissal of plaintiff's Third Amended Complaint. Specifically, ACH defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of any *Monell* claims asserted against ACH.

## INTRODUCTION

Plaintiff's response devotes considerable effort to lowering the bar for its *Monell* claim by citing cases in which plaintiffs had no opportunity to conduct discovery and therefore were necessarily vague in their initial pleading. The argument misses the point. Defendants have not asserted the Estate's *Monell* claim is subject to a heightened pleading requirement. (*See* ECF 106 at 4). Defendants assert, rather, that after months and months of discovery and access to over

100,000 pages of ACH inmate care records, the Estate cannot cite facts "plausibly suggesting a policy relevant to Fennigkoh and Pisney's decision-making [] or that it was an ACH directive, rather than their own professional discretion, that was the moving force behind their decisions." (ECF 106 at 5).

The Estate attempts in the response to paint a picture of a conspiracy that is both national in scope and specific to Monroe County, but ultimately ignores the single constitutional harm that is the gravamen of the complaint. The Estate alleges Nurse Fennigkoh and Nurse Practitioner Pisney failed to adequately investigate the medical history Christine Boyer reported at the time of her arrest and, as a result, Ms. Boyer was left to "go without" necessary blood pressure medications for a weekend. (ECF 102, ¶ 1). The Estate also alleges correctional officers and Nurse Practitioner Pisney used poor judgment in responding to symptoms Ms. Boyer later reported and that Ms. Boyer suffered a heart attack and passed away as a result. (Id. at ¶ 2). Despite having ample opportunity for discovery and access to ACH care records, the Estate has not plausibly alleged facts suggesting the existence of an ACH policy that was the moving force behind Nurse Fennigkoh's and Nurse Practitioner Pisney's medical decision-making in their interactions with Ms. Boyer. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (observing that the critical question under *Monell* is whether a corporate policy or custom "gave rise to the harm").

## ARGUMENT

### A. The *Leatherman* decision does not relieve plaintiff from the *Twombly* and *Iqbal* plausibility standard.

The Estate's initial argument appears to be that the U.S. Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) and "Rule 8's liberal standard of pleading" permit it to proceed on a *de facto* policy claim without identifying facts or events that suggest an unconstitutional practice is widespread. (ECF 115 at 8,

9). Plaintiff implies the Court's decision in *Leatherman* and notice pleading principles relieve it of any need to plead facts demonstrating a relevant widespread practice that was the moving force behind the constitutional violation at issue. The argument overstates *Leatherman* and understates the Estate's obligation.

Contrary to the Estate's assumption, defendants have not argued *Twombly* and *Iqbal* have "overruled *sub silentio*" the *Leatherman* decision. (ECF 115 at 9). However, the holding in *Leatherman* does not eliminate the requirement that to plead a *Monell* claim based on an implicit practice or policy so widespread that it constitutes a custom or usage with the same force as written law, the plaintiff must allege a claim that passes the *Twombly* and *Iqbal* plausibility threshold. "While *Leatherman* held that § 1983 claims are not subject to a heightened pleading standard . . ., claims brought in federal court are also subject to the generally applicable standards set forth in the Supreme Court's entire Rule 8(a) jurisprudence, including *Twombly* and *Iqbal*." *Cook v. Howard*, No. 11-1601, 484 Fed. Appx. 805, 810 (4th Cir. Aug. 24, 2012), *cert. denied*, 133 S. Ct. 1600, 185 L. Ed. 2d 580 (2013).

Notably, the rationale underlying *Leatherman* does not apply here. Unlike a typical motion to dismiss at the beginning of litigation, plaintiff has already conducted extensive discovery.

> The reasons [in *Leatherman*] for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage.

*Walker v. Zepeda*, No. 1:11-cv-01242-DME-CBS, 2012 U.S. Dist. LEXIS 74386, *14 (Colo. May 29, 2012) (citations omitted). Plaintiff has all the information available regarding ACH's official policies, practices, and training programs. With all this discovery completed, any leniency suggested in *Leatherman* is unnecessary. There is no practical or precedential reason for the pleading standard to be dictated only by *Leatherman*.

3

Defendants have not argued that the Estate should be evaluated under a heightened standard, but they do assert its claims fail to meet the plausibility standard. (ECF 106 at 4, *citing Tucker v. City of Chicago,* 907 F.3d 487, 491 (7th Cir. 2018) and *Bohannon v. City of Milwaukee*, 998 F. Supp. 2d 736, 741-72 (E.D. Wis. 2014)("In other words, there is no liberal pleading standard applicable to *Monell* claims; rather, the Court must apply *Iqbal* and *Twombly* just as it would in evaluating most other claims")). While alleging broadly (and implausibly) that ACH's business model is conspiratorial and focused on depriving inmates of their constitutional rights, plaintiffs have neglected their most critical responsibility: to demonstrate that the medical decision-making in Christine Boyer's case was dictated by unconstitutional and widespread ACH practices.

The holding in *White v. City of Chicago*, 829 F.3d 837 (7th Cir. 2016), is case-specific. It has not been interpreted to excuse a *Monell* plaintiff who proceeds on a *de facto* policy theory from alleging events suggesting a widespread practice relevant to the alleged constitutional violation:

> Since *White*, however, courts in this District, . . . have generally concluded that to properly state a *Monell* claim based on a custom or policy—absent context creating an inference of a widespread policy or custom, as in *White*—a plaintiff must allege more than his own single occurrence.

*Hutton v. City of Chicago*, No. 20-cv-03997, 2021 U.S. Dist. LEXIS 39783, *9-10 (N.D. Ill. Mar. 3, 2021).

The Estate has failed to meet the plausibility requirement. The allegations that ACH's "business model" is designed to deprive inmates of healthcare is both implausible and irrelevant to Ms. Boyer's specific care. Plaintiff alleges, for example, that a cornerstone premise of ACH's business model is that "jury verdicts from cases involving medical misconduct in jails and prisons are typically a fraction of the verdicts for comparable misconduct in the free world." (*See* ECF 102, ¶ 99). It alleges also that Monroe County has "little financial incentive to address deficiencies

4

in the care provided at the jail" because ACH agrees to indemnify the County for ACH's liability. (*See* ECF 102, ¶ 100). The Court is under no obligation to credit these fanciful speculations of plaintiff's counsel. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)(noting court should use its "judicial experience and common sense"); *see also Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [the court] may reject sheer speculation, bald assertions, and unsupported conclusory statements.")

The Estate has failed, moreover, to allege facts plausibly suggesting an ACH business practice was the moving force behind medical decisions in Ms. Boyer's case. The Estate knows from depositions, for example, that Ms. Boyer's blood pressure medication was in the process of verification. (ECF 102, ¶¶ 20-21). It knows also that ACH does not pay for inmate medications. The Estate does not and cannot allege Ms. Boyer's medication was withheld to save cost. While casting aspersions far and wide, plaintiff fails to plausibly allege facts addressing the immediate medical decision.

### B. Plaintiff has not adequately alleged facts to plausibly support an inference that ACH has a *de facto* constitutional practice.

The Estate has failed to meet the plausibility requirement. The allegations that ACH's "business model" is designed to deprive inmates of healthcare is both implausible and irrelevant to Ms. Boyer's specific care. Plaintiff alleges, for example, that a cornerstone premise of ACH's business model is that "jury verdicts from cases involving medical misconduct in jails and prisons are typically a fraction of the verdicts for comparable misconduct in the free world." (ECF 102, ¶ 99). The allegation is facially suspect and the type of speculative grievance of plaintiff's counsel that appears, unsupported by fact, throughout the Third Amended Complaint. The Estate alleges, also implausibly, that Monroe County has "little financial incentive to address deficiencies in the

care provided at the jail" because ACH has insurance. (*Id.*, ¶ 100). The suggestion ACH "pressures" its employees "to provide less care" is absurd. (*Id.*, ¶ 101). The pleading is rife with mudslinging and unfounded speculations. The Court is under no obligation to credit these fanciful speculations of plaintiff's counsel. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)(noting court should use its "judicial experience and common sense"); *see also Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [the court] may reject sheer speculation, bald assertions, and unsupported conclusory statements.")

The Estate has failed, moreover, to allege facts plausibly suggesting an ACH business practice was the moving force behind medical decisions in Ms. Boyer's case. The Estate knows from depositions, for example, and concedes that Ms. Boyer's blood pressure medication was in the process of verification. (ECF 102, ¶¶ 20-21). It knows also that ACH does not pay for inmate medications. The Estate does not and cannot allege Ms. Boyer's medication was withheld to save cost. While casting aspersions far and wide, plaintiff fails to plausibly allege facts addressing the immediate medical decision.

Plaintiff's counsel's firm asserted similarly broad "business practices" claims against another correctional healthcare provider in *Taylor v. Wexford Health Sources, Inc.*, No. 15 C 5190, 2016 U.S. Dist. LEXIS 76341 (N.D. Ill. June 13, 2016). The plaintiff's *Monell* claim was dismissed. *Id.* at *13-14. The court commented:

> Instead of tying his injury to specific policies, Taylor has chosen to provide a laundry list of ten alleged policies maintained by Wexford. Without additional facts to allow the Court to infer that these policies impacted the care Taylor received, they do not support a *Monell* claim against Wexford.

*Id.* at *13-14 (*citing Peacock v. Rigsby*, 2016 U.S. Dist. LEXIS 46994, 2016 WL 1383232, at *3 (N.D. Ill. Apr. 7, 2016) (dismissing *Monell* claim against Wexford where plaintiff's "allegation of

6

a cost-cutting policy is too speculative and untethered to his injury to support his claim"); *Johansen v. Curran*, 2015 U.S. Dist. LEXIS 110086, 2015 WL 4978702, at *2 (N.D. Ill. Aug. 20, 2015) (dismissing *Monell* claims regarding denial of medical care where they were non-specific and conclusory).

The Estate makes the same error here. It does not tie the medical decision-making in Ms. Boyer's case to specific policies. As in *Taylor*, this Court has not been provided sufficient facts to "infer that these policies impacted the care [Ms. Boyer] received." *Id.* To the extent the Third Amended Complaint discusses Christine Boyer's medical care it is in the context of the individual defendants' alleged lack of professional judgment. (ECF 102, ¶¶ 1-2, 20-37).

The Estate's non-specific and conspiratorial claim that ACH's alleged business model impacted Ms. Boyer's care is substantially undermined by its allegation that Nurse Practitioner Pisney, who was the primary medical provider in Ms. Boyer's case, was accused by Nurse Fennigkoh of "sending people to the ER too readily." (ECF 102, ¶ 106). Per the Estate's own allegation, the ACH business model was not followed by the very provider who made the medical decisions relevant to Ms. Boyer's care. The Court should infer either ACH had no policy against sending inmates out for specialty care or that Nurse Practitioner Pisney did not follow it. Either way, there is no evidence such an illogical practice impacted Ms. Boyer's care on December 21-22, 2019.

> **C. Plaintiff has not properly identified multiple specific incidents to support his *Monell* allegations.**
>
> **1. Plaintiff's alleged comparator incidents are <u>not</u> plausibly the result of a policy that discourages referrals to outside medical care.**

Both defendants appropriately and correctly pointed out in the initial briefs that the Estate in the Third Amended Complaint does nothing more than collect anecdotal cases and claim the

7

defendants "provided inadequate care" or inmates' complaints were "ignored," which is insufficient to state a *Monell de facto* policy claim. (ECF 106 at 8, 11-15); *see Terry v. Cty. of Milwaukee*, No. 17-CV-1112-JPS, 2018 U.S. Dist. LEXIS 93298, at *23 (E.D. Wis. June 4, 2018)(holding anecdotal recitation of inmate care connected "only at the highest level of generality" are insufficient to charge a municipal entity with notice of such an unconstitutional practice). It was appropriate for defendants to address their arguments to an alleged policy of "inadequate medical care" because that is the "policy" identified and discussed in the Third Amended Complaint. The phrase "inadequate medical care" appears at least 37 times in the Third Amended Complaint. (ECF 102, ¶¶ 41, 43, 45, 46, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 76, 108, 116, 125). Summarizing its argument about alleged ACH and Monroe County constitutional deficiencies, the Estate alleged, "In this way the defendants, including ACH, Monroe County, Hendrickson, Pisney and Fennigkoh agreed and conspired to provide inadequate medical care to detainees at the Monroe County Jail, including Ms. Boyer." (ECF 102, ¶ 108).

The general "policy" of providing "inadequate medical care" is, in fact, the *Monell* theory under which the Estate attempted to proceed in the Third Amended Complaint under a fair reading of the pleading. It is only in its response brief that the Estate pivots and claims "the policy at issue is the refusal to refer patients to outside care." (ECF 115 at 2, 8, 21). Respectfully, plaintiff should not be permitted to replead in a brief. The Estate clearly recognized the deficiency in its pleading and is attempting to rescue the claim. Having responded three (3) times to plaintiff's amended pleading, defendants should not face yet another amendment in a brief in opposition to a Rule 12(c) motion.

If the Court were to permit the Estate to proceed under a *Monell* theory it did not plead, its attempt to demonstrate a widespread practice fares no better. The Estate makes no meaningful

8

attempt to refute ACH's argument that lawsuits filed against it in other states provide no credible inference of a relevant unconstitutional practice. (*See* ECF 106 at 9-11). The Estate's response relies on the lawsuits only to inflate the number of alleged comparators. (ECF 115 at 22, 23). It makes no effort to argue the scattered lawsuits against ACH support its claim that ACH has a practice of refusing outside medical care. The Court should similarly ignore ¶¶ 39-75 of the Third Amended Complaint.

The Estate's argument with reference to alleged instances of inadequate medical care at Monroe County Jail is revealing. (ECF 115 at 23). Defendants pointed out that plaintiff's counsel has been granted access to more than 91,000 pages of inmate medical records but can offer only a handful of comparators. (ECF 106 at 11 et seq.) And, despite having the comparator inmate's medical records in hand, the Estate does not allege a single instance in which actual harm or a bad medical outcome resulted. (ECF 106 at 12; ECF 102, ¶¶ 76-95). No does plaintiff allege the comparator inmates complained of the care or that the care was improper by any standard other than plaintiff's counsel's subjective and uninformed opinion. (ECF 102, ¶¶ 76-95).

In response, the Estate argues "defendants' focus on outcomes is misplaced" and "the fact that not all the people identified in the example cases ultimately had catastrophic medical outcomes does not lessen their value as examples." (ECF 115 at 23). Respectfully, the defendants have focused on "outcomes" because the entire premise of *de facto* policy *Monell* liability is that "a prior pattern of similar constitutional violations" has put the entity on notice and "continued adherence" to the policy can imply "conscious disregard" for the consequences. *See Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 236 (7th Cir. 2021). Anecdotal claims that inmate medical needs could have been handled better but did not result in harm are irrelevant to *Monell* liability. The Estate's argument that medical outcomes are irrelevant demonstrates that (1) the

inmates' records show no bad outcomes; and (2) the anecdotal claims at ¶¶ 76-95 of the Third Amended Complaint include no harms of constitutional significance and are therefore irrelevant to the Rule 12(b)(6) analysis. Defendants are confident the comparators alleged in the Third Amended Complaint will not be cited by plaintiff in response to summary judgment, should the case be allowed to proceed.

Plaintiff's suggestion that defendants left any of its comparators "unchallenged" is simply wrong. (ECF 115 at 22). Defendants challenged every reference to lawsuits against ACH as speculative and irrelevant and every reference to other Monroe County Jail inmate care as deficient because there is no evidence other inmate care was unconstitutional or the result of an ACH policy. (ECF 106 at 9-11, 11-13).

The Estate's argument that actual notice of comparator cases is not necessary is, similarly, just wrong. (ECF 115 at 24-25). The premise of *Monell* liability for a widespread practice is that an "unlawful practice" must be "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2008). Instances of alleged delays in medical care at the Monroe County Jail from which the Court cannot infer harm resulted to the inmate and about which the entity did not know cannot form the basis for entity liability. Such a theory amounts to *respondeat superior* liability, which is not permitted.

A plaintiff must allege "a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). The Court is not required to ignore the deficiencies. The Estate's attempt to spin innocuous instances of inmate medical care at the Monroe County Jail into a widespread practice of deficient care lacks credibility. It fails the plausibility standard.

  **2.  Lawsuits against ACH do not support plaintiff's *Monell* claims.**

Plaintiff continues to argue that lawsuits against ACH that bear no factual, temporal or geographic relationship to Ms. Boyer's care are somehow relevant. The argument begs credulity. Plaintiff has alleged merely the existence of lawsuits. (ECF 102, ¶¶ 39 et seq.) The filing of a lawsuit is not evidence the facts alleged are true. As the Court knows well, the filing of a lawsuit proves nothing. *See Strauss v. City of Chicago*, 760 F.2d 765, 768-69) (7th Cir. 1985)("This reasoning is specious, for the number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all.")

The Estate equates the fact lawsuits were filed with "medical incidents." It concedes it has no knowledge of the underlying facts of the lawsuits, expertise in the medical matters alleged therein, or ability to assess the credibility of the complainant. The Court can and should ignore this shameless, unfounded speculation. *Taha*, 947 F.3d at 469 (a court considering a Rule 12(b)(6) motion "may reject sheer speculation, bald assertions, and unsupported conclusory statements").

Plaintiff exaggerates the holding in *Shadrick v. Hopkins Cnty.*, 805 F.3d 724 (6th Cir. 2015). The court there did not hold that examples in other jails are definitively admissible or probative. Instead, the court deferred any comment on the issue, stating, "Although we do not address Shadrick's argument that a pattern of tortious or unconstitutional conduct by inadequately trained nurses existed, . . . evidence about similar incidents of inmate deaths in jail facilities served by SHP may be relevant to whether SHP acted with deliberate indifference to the medical needs of inmates with whom its nurses came into contact at HCDC." *Id*. at 744 (underlining added). The comment is dicta and references a limited circumstance in which employees of one facility may encounter inmates at another facility.

### 3. Plaintiff has not plead a claim for conspiracy against ACH.

Just as it pivoted to a new theory about the widespread practice that underpins its *Monell* claim, the Estate also asserts it has plead a conspiracy claim despite its plain omission from the Third Amended Complaint. Plaintiff plead eight (8) causes of action; none of them is conspiracy. (ECF 102, ¶¶ 117 et seq.)

Plaintiff asserts in its response the cause of action was plead in ¶ 108, where it alleged:

On other occasions, Ms. Fennigkoh and the ACH regional supervisor told Monroe County staff that they could push back on instructions from practitioners that would impose additional duties, such as resisting an instruction to measure blood pressure every hour, and instead suggest less frequent measurements. The jail's administrators, including Mr. Hendrickson, were aware of these communications, and approved of them to save money in staffing, even if pushing back against a practitioner's medical instructions could result in unnecessary medical danger to people at the jail. In this way the defendants, including ACH, Monroe County, Hendrickson, Pisney, and Fennigkoh agreed and conspired to provide inadequate medical care to detainees at the Monroe County Jail, including Ms. Boyer.

(ECF No. 102 ¶ 107-08).

The single reference to the word "conspired" does not satisfy the heightened pleading requirement of Rule 9(b). "To establish a § 1983 claim under a conspiracy theory, a plaintiff must show that: "1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, . . . and 2) those individual(s) were 'willful participant[s] in joint activity with the State or its agents.'" *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)) (alteration in original). Plaintiff must also state "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Cooney v. Casady*, 652 F.Supp. 2d 948, 957 (N.D. Ill. 2009). Even if plaintiff may have sufficiently plead a conspiracy claim, but it is not plead as a cause of action that would put the defendants on notice that a conspiracy claim is being made.

Further, the alleged conspiracy was not to violate plaintiff's constitutional rights, but to cut costs. Plaintiff has no evidence, and has not pleaded as such, that the defendants conspired to specifically deprive the plaintiff individually of her constitutional rights. The emails plaintiff cites are unrelated to plaintiff's care and not in the same timeframe as her incarceration.

Evidence of a conspiracy cannot be speculative. In *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995), the Court noted that the plaintiff had "not offered evidence to rebut the [defendant's] claim that [the defendant's] decision was based on [] legitimate factors, since [] unsupported conjecture is not competent evidence in this regard." Costs and other business decisions are legitimate factors in running a private business (even one acting under the color of state law). The fact that ACH wants to save money does not mean its intention was to provide insufficient medical care. *See Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1008-09 (E.D. Wis. 2010) ("Viewing the allegations as true, LDD and Mr. Muenster took the actions that they did to ensure that LDD could purchase the property in question at a low price, not because they had a broader desire to see Mirbeau's constitutional rights violated.").

The Court should make clear in its order that plaintiff has not asserted a conspiracy cause of action, as it belatedly claims.

## CONCLUSION

Defendants respectfully request that the Court enter an order dismissing plaintiff's *Monell* claims against ACH with prejudice, on the merits, with costs and fees to be awarded.

Dated this 11th day of November, 2022.

**LEIB KNOTT GAYNOR LLC**

By:*/s/ Douglas S. Knott*
Douglas S. Knott, SBN 1001600
Kelly E. Lamberty, SBN 1095208
Attorneys for the ACH, Lisa Pisney
and Amber Fennigkoh
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2102
Fax: (414) 276-2140
Email: dknott@lkglaw.net
klamberty@lkglaw.net

The Court should make clear in its order that plaintiff has not asserted a conspiracy cause of action, as it belatedly claims.