IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Gregory Boyer, | |
| Plaintiff, | Case No: 3:20-cv-1123-JDP |
| v. | Judge James D. Peterson |
| Advanced Correctional Healthcare, Inc., *et al.*, | Magistrate Judge Stephen L. Crocker |
| Defendants. | |
| Gregory Boyer, | |
| Plaintiff, | Case No: 3:22-cv-00723-JDP |
| v. | Judge James D. Peterson |
| USA Medical & Psychological Staffing, Inc., *et al.*, | Magistrate Judge Stephen L. Crocker |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF RENEWED MOTION TO COMPEL**

Pursuant to the Court's September 18, 2023 Order (ECF 153[1]) Plaintiff submits this reply in support of his motion to compel, ECF 148, and in rejoinder to the response filed by the ACH Defendants, ECF 158, which includes a request for sanctions.

Plaintiff's motion to compel concerned three sets of discovery: ***first***, RFP 27, which was a request for documents relating to deaths at facilities serviced by ACH; ***second***, Interrogatory 19, which concerns a litigation review document about Ms. Boyer's death; and ***third***, RFPs 7–31, which concern documents relating to actions taken by ACH after catastrophic medical outcomes

---

[1] All *Boyer* ECF docket entries cited are from *Boyer v. Advanced Correctional Healthcare, Inc.*, Case No. 2:20-cv-1123-JDP (W.D. Wis.). For each such filing, a parallel ECF entry is made in *Boyer v. USA Medical & Psychological Staffing*, Case No. 3:22-cv-00723-JDP (W.D. Wis.).

in other cases.  In its response, ACH reports, accurately, that the parties held a telephone conference on September 28 and tentatively resolved the *first* and *third* sets of discovery, leaving only the *second*, Interrogatory 19, for the Court to resolve at this time.

Instead of reporting the partial resolution of the motion and proceeding to the merits of the remaining dispute, ACH devotes the first two sections of its brief (the *Introduction* and *Status Update*, *see* ECF 158 at 1–3), plus an affidavit attaching correspondence, *see* ECF 159, to characterize Plaintiff's counsel as an unreasonable and overbearing litigant.  Those statements do not bear on the merits of the remaining discovery dispute, and Plaintiff has concluded that ACH's conduct brought to light by those statements should be addressed in a separate motion.  In this reply brief, Plaintiff focuses on Interrogatory 19, the remaining dispute at issue.

## DISCUSSION

The thrust of ACH's response regarding Interrogatory 19 is that the "real intention" behind Plaintiff's motion is a sort of subterfuge to undo an earlier ruling by the Court.  ECF 158 at 6.  That is not so.  Interrogatory 19 does, however, seek to put ACH on the record about exactly what sort of investigation it conducted after Ms. Boyer's death.  ACH's objections are an effort to wriggle out of providing that information.  It is not Plaintiff who is dissatisfied with ACH's response, but rather ACH that is attempting to provide a non-answer.

Plaintiff's Interrogatory 19 asks ACH to say whether it performed a mortality review following Ms. Boyer's death. A ***mortality review*** (variously called peer review, death review, administrative review, clinical mortality review, etc.) is "a process by which physicians analyze critically the medical services performed by their colleagues for the purpose of decreasing instances of medical malpractice" in the future.  *Rechsteiner v. Hazelden*, 753 N.W.2d 496, 505 (Wis. 2008) (quoted in Plaintiff's March 23, 2022 motion to compel, ECF 57 at 5–6).  A

***litigation risk assessment*** has an entirely different purpose: in ACH's words, it "addresses *only* litigation risk." ECF 59 at 9. By definition, the purpose of a litigation risk assessment is not to improve the provision of medical care by preventing similar errors going forward (in the manner of a mortality review). If it were, the "litigation risk assessment" would be a "dual purpose" document, constituting a document with both a legal and a business purpose, and it would be subject to disclosure in a federal civil rights case like this one. *See* ECF 57 at 6–8 (describing legal regime surrounding dual purpose documents).

The purpose of Interrogatory 19 is to get ACH's admission, under oath, that it never conducted a mortality review of Ms. Boyer's death (or if it did, to describe the particulars of that review). If ACH in fact confined its assessment of Ms. Boyer's death to a ***litigation risk assessment***, and never conducted a ***mortality review***, that fact would indicate that ACH examined the circumstances of Ms. Boyer's death only to assess its litigation exposure, and never tried to figure out, for the purpose of preventing future medical failures, whether Ms. Boyer's death resulted from medical errors that should be fixed. As Plaintiff noted in his opening motion, such a fact would support Plaintiff's claim that "'ACH avoids discovering problems with the delivery of medical care by not . . . conducting mortality reviews following a death or catastrophic event . . . .'" ECF 148 at 10 (quoting the Court's June 13, 2023 Order, ECF 134 at 8). ACH's response insists that Plaintiff seeks to undermine the Court's 2022 assessment that the Schamber litigation risk assessment was privileged. *See* ECF 158 at 6. Aside from being untrue, this claim ignores reality: if ACH conducted only a litigation risk assessment of Ms. Boyer's death, and not a mortality review, that is a damning fact in its own right.

Interrogatory 19 thus seeks to establish a fact that is relevant to the claims and defenses in this case. Given the context of this case, Plaintiff submits that "mortality review" is not a vague

3

term. All the same, when ACH objected that "mortality review" was vague, Plaintiff provided a definition to clarify the term, matching the definition given in a healthcare industry standard. *See* ECF 148 at 9–10. That is what parties are supposed to do. *See Elite Mitigation Services, LLC v. Westchester Surplus Lines Insurance Company*, No. 5:19-cv-381, 2020 WL 6127140, at *2 (N.D. Fla. 2020) ("To the extent Plaintiff was unsure of the definition [of a discovery term], it could have conferred with Defendant …."); *Collins v. Wal-Mart Stores, Inc.*, No. No. 06-cv-2466, 2008 WL 1924935, at *8 (D. Kan. 2008) (noting that party objecting to interrogatory as vague should have "clarified its meaning by conferring with Plaintiffs"). Alternatively, ACH might simply have supplied its own interpretation of the term, and then explained how it defined "mortality review" in its response. *Cf. Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996) ("Respondents should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. To clarify their answers, respondents may include any necessary, reasonable definition of such terms or phrases.")

ACH did neither. Indeed, its response shows just why Plaintiff's motion to compel is necessary—ACH now says that maybe it *did* conduct a mortality review, after all. It says:

> The litigation risk assessment completed by ACH arguably falls within one of the three vague descriptions in the request ("mortality review", "death review", or "administrative review").

ECF 158 at 6. What we have is a game: Plaintiff's interrogatory uses a term that is commonly understood in the context of this litigation. When ACH nevertheless objects that the term is vague, Plaintiff provides a definition. ACH does not accept the definition, and provides a response based on its own interpretation of a term, which ACH will not reveal. ACH has provided a response, but will not say what its response means.

4

At bottom, Interrogatory 19 goes to a question of fact. Either ACH did not conduct a morality review, as defined, or it conducted a mortality review—in addition to or combined with its litigation risk assessment—which by definition would not privileged, and would need to be produced. ACH seems to believe that the Court's 2022 *in camera* review of the Schamber document, the "litigation risk assessment," was a ***legal*** victory that it can now exploit to its advantage, simultaneously asserting that the document is both privileged and therefore undiscoverable—but maybe also a mortality review, depending on how you look at it. The question of whether ACH conducted a mortality review of Ms. Boyer's death, however, is a question of ***fact***: a mortality review is an act in the practice of medicine, and ACH either conducted a mortality review of Ms. Boyer's death, or it did not.

ACH has told this Court that the Schamber document was not a mortality review, but rather only a legal risk assessment. Ultimately, however, ACH and its employees are the only people who know what the document—or any other document—was actually used for. Interrogatory 19 seeks to hold ACH to the factual representations that its lawyers made to the Court last year. ACH cannot tell the Court that it used the document for one purpose, receive privilege protection based on that representation, and then suggest later that the document had a different purpose—the purpose that ACH specifically disclaimed when it was seeking to shield the document from discovery.

## CONCLUSION

Plaintiff respectfully requests that this Court enter an Order directing ACH to amend its answer to Interrogatory 19 as set forth in Plaintiff's motion to compel. Plaintiff's discovery enforcement of Interrogatory 19 is an appropriate measure to gather relevant discovery in this case, and as such, ACH's request for sanctions should be denied.

Dated: October 10, 2023

Respectfully submitted,

<u>/s/ Stephen Weil</u>

*One of Plaintiff's attorneys*

Stephen H. Weil
Arthur Loevy
Maria Makar
Megan Porter
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
(312) 243-5900
porter@loevy.com