IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREGORY BOYER, as administrator of the
Estate of Christine Boyer, and on his own
behalf,

                Plaintiff,

v.

ADVANCED CORRECTIONAL HEALTHCARE,
INC., LISA PISNEY, AMBER FENNIGKOH, STAN
HENDRICKSON, DANIELLE WARREN, SHASTA
PARKER, and MONROE COUNTY, WISCONSIN,

                Defendants.

OPINION and ORDER

20-cv-1123-jdp

---

GREGORY BOYER, as administrator of the
Estate of Christine Boyer, and on his own
behalf,

                Plaintiff,

v.

USA MEDICAL & PSYCHOLOGICAL STAFFING,
NORMAN JOHNSON, TRAVIS SCHAMBER,
WESLEY HARMSTON, and JILLIAN BRESNAHAN,

                Defendants.

OPINION and ORDER

22-cv-723-jdp

---

Christine Boyer suffered a fatal heart attack while in custody at the Monroe County jail. Her husband, Gregory Boyer, filed these lawsuits on his own behalf and as the administrator of Christine's estate. Boyer contends that the jail, its employees, and its contracted medical service providers violated Christine's Fourteenth Amendment rights by failing to provide her constitutionally adequate health care.

Two matters are before the court. First, Boyer moves to sanction defendant Advanced Correctional Healthcare (ACH), contending that its counsel misrepresented the availability of

discoverable information and withheld a key document about deaths that had occurred in ACH facilities nationwide. The court will deny Boyer's request for sanctions because ACH has not violated a court order to compel discovery and the facts do not support sanctions. However, the court agrees that ACH misrepresented the availability of discoverable information, which prevented Boyer from obtaining key information about deaths in ACH facilities until December 2023. ACH's misrepresentation has prejudiced Boyer because, with dispositive motions due in less than a month, Boyer does not have time to fully investigate the new information he only recently received. Therefore, the court will strike the schedule and order the parties to conduct a new pretrial conference to reset the schedule and propose a new discovery plan.

Second, the Estate of Demetrius Stephenson moves to intervene in this case solely to modify the protective order to obtain discovery from Boyer's counsel. The Estate is the plaintiff in *The Estate of Demetrius Stephenson v. Calumet County*, No. 1:22-cv-956 (E.D. WI). That case, like Boyer's case, includes a claim that ACH had a nationwide practice of providing inadequate healthcare to inmates. The Estate seeks documents from Boyer's counsel related to inmate medical incidents that occurred in ACH-serviced correctional facilities nationwide. The Estate's motion does not show that it could not obtain the same documents from ACH through normal discovery procedures, so the court will deny the motion. But the Estate may renew the motion to seek a narrower set of documents if it can show that those documents would be discoverable in its case and could not be obtained from ACH through normal discovery procedures.

ANALYSIS

A. Motion for sanctions

### 1. Factual background

The facts relevant to the motion for sanctions encompass almost three years of discovery in this case:

In May 2021, Boyer served requests for production on ACH. Request 27 asked ACH to produce documents "relating to deaths from medical conditions of persons incarcerated at facilities serviced by ACH between January 1, 2011, through the present, including but not limited to medical records, death reviews, mortality and morbidity reports, investigative documents, incident reports, and communications." Dkt. 177-1, at 7.[1] Request 27 was intended to produce evidence related to Boyer's *Monell* claim, in which Boyer alleges that ACH had a nationwide practice of providing inadequate healthcare to inmates at facilities it served.

ACH objected that Request 27 was overly broad because it included no geographic boundaries, requested documents for more than a ten-year period, and had no limitations on the types of deaths other than that they be "from medical conditions." ACH nevertheless produced some responsive documents concerning four deaths from heart attacks (Christine Boyer's cause of death) that had occurred at ACH facilities since 2016. Dkt. 181, ¶¶ 1–5.

In June 2021, the parties' counsel discussed the scope of Request 27. ACH's counsel stated that it was difficult to find responsive cases because ACH does not track deaths at facilities where it provides medical care. Dkt. 177-3, at 1. Relying on ACH's counsel's representation, Boyer changed the focus of discovery for his *Monell* claim. Instead of attempting

---

[1] All docket references are to the docket in 20-cv-1123-jdp.

3

to get records of deaths from ACH, Boyer conducted a nationwide public records search of federal cases in which ACH had been involved and issued subpoenas for case records to the law firms involved in those cases. This search produced some cases that Boyer used to supplement his *Monell* claim. Dkt. 161, ¶¶ 40–75. But it also had limitations, namely that it could only pick up deaths that led to federal lawsuits.

In February 2022, Boyer served additional discovery on ACH, including Interrogatory 20, which asked ACH to "[d]escribe what efforts, if any, ACH makes to track deaths that occur at the facilities ACH services (including deaths that occur offsite shortly after a critical medical incident the facility), and identify the documents or ESI ACH uses to track such deaths." ACH responded:

> ACH requests that field staff report inmate deaths. It has found the reporting is inconsistent because, among other reasons, ACH staff have limited information about medical care after an inmate leaves the facility, post-release events are not reported, and events are subject to individual interpretation. Subject to the objections, see ACH 19158-19161.

Dkt. 177-5, at 4. The included document was a chart listing 48 deaths that occurred in ACH-serviced facilities in 2021 and 2022.

Boyer found the response to Interrogatory 20 inconsistent with ACH's counsel's earlier representation that ACH did not track deaths within its facilities. Believing that ACH had not provided complete responses to Request 27, Boyer's counsel followed up with ACH's counsel, Dkt. 177-7, and ultimately filed a motion to compel ACH to supplement Request 27. Dkt. 81. The court dismissed the motion to compel without prejudice because defendants filed a motion to dismiss Boyer's *Monell* claim. Dkt. 130. Discovery on the *Monell* claim paused for almost a year until the court denied the motion to dismiss in June 2023. Dkt. 134.

4

In late June 2023, Boyer's counsel contacted ACH's counsel to resume discovery discussions. Dkt. 177-10. But ACH's counsel refused further discussion about Interrogatory 20 and Request 27, saying that Request 27 was "plainly over broad and unduly burdensome on its face" and that "ACH has no ability to identify a universe of 'deaths related to medical conditions' in a 12 year window at more than 300 facilities it serves." Dkt. 177-15. Boyer then filed his second motion to compel. Dkt. 148.

On September 28, 2023, the parties' counsel agreed to voluntarily resolve the portion of the motion to compel concerning Request 27. They agreed that ACH would identify cases in which ACH had sent a litigation assessment alert to its third-party litigation claims administrator. ACH produced the responsive document on December 12, 2023. This document, which the parties refer to as Exhibit 28, is a table of 408 suicides, attempted suicides, and deaths that occurred at ACH-serviced facilities between 2016 and 2023. Dkt. 178.

Since receiving Exhibit 28, Boyer has asked ACH for additional information from its third-party claims administrator that is responsive to Request 27, including information about deaths prior to 2016 and any additional documents related to the deaths in Exhibit 28. Dkt. 177-22. ACH has not responded to these inquiries. Dkts. 177-23–177-25.

2. Remedy

Boyer contends that either ACH or its counsel should be sanctioned for misrepresenting the availability of discovery information and for withholding key discovery related to deaths in ACH-serviced facilities. District courts have broad discretion in deciding whether to award sanctions for discovery-related misconduct. *Matei v. Cessna Aircraft Co.*, 35 F.3d 1142 (7th Cir. 1994). Generally, sanctions are awarded after a party violates a court order to compel discovery.

Federal Rule of Civil Procedure 37(b). But Boyer points to three other possible bases for sanctions that do not require violation of a court order. Rule 26(g)(3) sometimes requires sanctions for parties or attorneys who incorrectly certify that a discovery response is complete and accurate. *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 407–08 (7th Cir. 1998). Rule 37(c)(1) requires sanctions for parties who, without justification, fail to make initial or supplementary disclosures under Rules 26(a) and 26(e). *See David v. Caterpillar, Inc.*, 324 F.3d 851, 856–57 (7th Cir. 2003); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 956 (N.D. Ill. 2021). And the court may exercise inherent authority to sanction a party or attorney who has willfully disobeyed discovery rules or engaged in a bad faith effort to disrupt or delay the litigation process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Maynard v. Nygren*, 332 F.3d 462, 470–71 (7th Cir. 2003), *overruled on other grounds by Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016).

Boyer contends that either ACH or its counsel should be sanctioned for misleading Boyer by representing that ACH did not track deaths in the facilities it serviced and for failing to provide the third-party claims administrator data in response to Request 27 for more than two years. The court agrees with Boyer that ACH's counsel's statement that ACH did not track deaths in its facilities was misleading, because ACH did report at least some of those deaths to its third-party claims administrator. That statement prejudiced Boyer because it caused Boyer to fundamentally change his discovery strategy and meant that Boyer did not discover the third-party claims administrator data until December 2023, giving him little time to investigate the deaths that were included in that data before the dispositive motions deadline.

But the court concludes that sanctions are not warranted here. The court cannot award sanctions under Rule 37(b) because ACH did not violate any court order to compel. In fact, it

produced the third-party claims administrator data as part of a voluntary agreement to resolve Boyer's motion to compel.

Sanctions under Rules 26(g)(3) and 37(c)(1) are not appropriate because ACH did not incorrectly certify its responses to Request 27, and it did not fail to supplement those responses. ACH objected to Request 27 from the beginning as being overbroad because it requested documents related to all deaths from medical conditions, in all ACH-serviced facilities nationwide, over more than a ten-year period. Nevertheless, ACH produced some responsive documents. Dkt. 181-1–181-5. It did not make an incorrect certification because it never certified that it had provided every potentially responsive document. It asserted that the overbreadth of the request prevented it from doing so. Dkt 181-5, at 2–3. And it did not fail to supplement its response. Once Boyer moved to compel, the parties agreed that providing the third-party claims administrator data was a reasonable way to respond to Request 27, and ACH did provide that data.

Sanctions under the court's inherent authority are also not appropriate. Although the court agrees with Boyer that ACH's counsel misled Boyer when it represented that ACH did not track deaths, it is not clear that the statement was willfully misleading or made in bad faith. ACH's counsel may have made the statement in good faith because he did not view ACH's reporting of some deaths to its third-party claims administrator to alert them to the possibility of litigation as a method of tracking deaths. Boyer argues that ACH's counsel engaged in bad faith by repeatedly requesting deadline extensions to prepare for trials that did not end up occurring. Dkt. 177, at 11–14. But this is not sufficient evidence of bad faith. Even if those trials did not occur, ACH's counsel could have been honestly occupied in preparing for them.

7

Although sanctions are not warranted, ACH prejudiced Boyer by misrepresenting that it did not track deaths in its facilities. The court finds that this is good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). The current schedule has the deadline for summary judgment motions on April 1, 2024. But Boyer only received the list of deaths from ACH's third-party claims administrator in December 2023 and he has not yet had time to fully investigate those deaths. Without the opportunity to investigate, Boyer would be disadvantaged in defending himself against a motion for summary judgment on his *Monell* claim. Therefore, the court will strike the schedule and order a new pretrial conference to reset deadlines in these cases.

The pretrial conference will also allow the parties to propose a new discovery plan. In his brief, Boyer indicates that, since it produced Exhibit 28, ACH has been unresponsive to his requests for additional information responsive to Request 27. Dkt. 177 at 16 and Dkt. 182, at 1–2. The parties should be prepared to discuss the scope of Request 27 and any remaining production needed for that request at the pretrial conference. The court will order the parties to confer and submit a joint proposed discovery plan no later than seven days prior to the pretrial conference. If the parties are unable to agree as to the scope of additional discovery needed, each party may submit alternative proposals on points of unresolvable disagreement.

**B.  Motion to intervene and modify the protective order**

The Estate of Demetrius Stephenson seeks to modify the protective order in this case to obtain documents from Boyer's counsel that are covered by the protective order. The Estate seeks all documents related to medical incidents in ACH-serviced facilities that Boyer has obtained through Rule 34 discovery and subpoenas. Dkt 165-2. This amounts to thousands of pages of documents.

The Seventh Circuit directs courts to consider four factors in resolving motions to modify protective orders: (1) the nature of the protective order, and particularly whether the parties stipulated to it, (2) the foreseeability, at the time of issuing the order, of the modification requested, (3) the parties' reliance on the order, and (4) most significantly, whether good cause exists for the modification. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018). The party seeking modification bears the burden of showing good cause. *Id.* at 566.

The first three factors are inconclusive. The parties stipulated to the protective order, which would weigh against modifying it for their benefit, but which weighs neither for nor against modification by a third-party intervenor. Foreseeability is also not relevant to a third-party intervenor; it generally applies to situations where one of the parties that was involved in negotiating the terms of the protective order subsequently seeks to modify it. *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175 (N.D. Ill. 2006). Reliance weighs slightly against modification. Reliance is "the extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Murata*, 234 F.R.D. at 180 (quoting *Bayer AG & Miles, Inc. v. Barr Lab'ys, Inc.*, 162 F.R.D. 456 (S.D.N.Y. 1995)) Some of the documents that the Estate seeks were obtained not from ACH, but from subpoenas to third parties, so ACH never "afforded access" to those materials at all. But other documents were produced by ACH, possibly in reliance on the protective order. The Estate seeks thousands of pages of documents, so it is difficult for the court to evaluate the extent to which ACH may have relied on the protective order when it produced each of the documents the Estate seeks.

Most importantly, the fourth factor weighs heavily against modification. The Estate has not shown good cause for why it must obtain documents about medical incidents in

ACH-serviced facilities from Boyer's counsel instead of requesting production of these documents from ACH via normal discovery procedures. *See* Fed. R. Civ. P. 34. These discovery procedures provide important procedural protections for ACH and facilitate proper case management for the court. If the Estate requests these documents from ACH under Rule 34, then ACH can object to the production of documents it believes are non-discoverable. Fed. R. Civ. P. 34(2)(B). If the parties cannot agree, then the Estate can bring a motion to compel and the court in the Estate's case would decide whether the information sought is discoverable. Fed. R. Civ. P. 37(a)(1). If this court allows the Estate to circumvent normal procedures by obtaining a huge trove of information from Boyer's counsel when it could have obtained the same information from ACH under Rule 34, it will deprive ACH of the opportunity to object to the production of potentially non-discoverable information and it will deprive the court in the Estate's case of the opportunity to manage discovery in its own case.

The Estate cites *Lippert v. Ghosh*, No. 10 CV 4603, 2023 WL 3267977 (N.D. Ill. May 4, 2023), arguing that this court should grant its motion to intervene and modify the protective order for the same reasons that the court did in *Lippert*. Like this case, *Lippert* involved a *Monell* claim against a correctional healthcare provider alleging that the provider had a widespread practice of failing to provide adequate healthcare. And like this case, the movant was an individual who sought documents from plaintiff's counsel to support his own *Monell* claim against the same correctional healthcare provider. But there is an important factual distinction between this case and *Lippert*. The movant in *Lippert* had already requested the documents it wanted from the correctional healthcare provider through a Rule 34 request for production, and the correctional healthcare provider had responded that it could not answer the request because it did not possess the names of the individuals whose documents the movant requested.

*Id.* at *1. To the court's knowledge, the Estate in this case has not served a request for production on ACH for the documents it seeks and has not attempted to determine which of those documents ACH might be able to provide through normal discovery procedures.

The Estate may be able to acquire most, if not all, of the documents it seeks from ACH through normal discovery procedures, so the court will deny the Estate's motion to intervene to modify the protective order. However, if the Estate can show that some documents from Boyer's case would be discoverable in the Estate's case and are not obtainable through normal discovery procedures, the Estate may renew its motion to modify the protective order to seek that narrower set of documents.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for sanctions, Dkt. 176, is DENIED.

2. The schedule in these cases is STRUCK. The clerk of court is directed to schedule a new pretrial conference with Magistrate Judge Crocker to reset the schedule and set a new discovery plan. The parties are ordered to submit a joint proposed discovery plan, or to submit separate proposed plans on areas of unresolvable disagreement, no later than seven days before the pretrial conference.

3. The Estate of Demetrius Stephenson's motion to intervene and modify the protective order, Dkt. 165, is DENIED without prejudice.

Entered March 20, 2024.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge

11