UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**GREGORY BOYER**, as Administrator of the
Estate of Christine Boyer, and on his own behalf,

      Plaintiff,

v.                                                        Lead Case No. 20-CV-1123

**ADVANCED CORRECTIONAL
HEALTHCARE, INC.**, *et al.*,

      Defendants.

---

**GREGORY BOYER**, as Administrator of the
Estate of Christine Boyer, and on his own behalf,

      Plaintiff,

v.                                                          Case No. 22-CV-723

**USA MEDICAL & PSYCHOLOGICAL
STAFFING**, **S.C.**, *et al.,*

      Defendants.

---

**DEFENDANTS' MOTIONS *IN LIMINE***

---

Defendants Advanced Correctional Healthcare, Inc., USA Medical & Psychological Staffing, S.C., Lisa Pisney, and Amber Fennigkoh hereby moves the Court for the following orders *in limine* and submits as follows in support of the motions in accordance with the Court's Order ((Dkt. 31).

## ARGUMENT

### Motion in Limine No. 1:

### Motion to Preclude Plaintiff from Offering Evidence or Argument that USA Medical was Negligent

Defendants move the Court for an order precluding introduction of evidence or argument alleging active negligence by USA Medical & Psychological Staffing, S.C. The Court's order on the parties' summary judgment motions allowed plaintiff's claim under § 1983 against Nurse Practitioner Lisa Pisney to proceed. (Dkt. 306 at 31). It also allowed the Estate's and Greg Boyer's claims under state law for medical malpractice to proceed against the ACH Defendants. *Id.* The Court in its order directed the parties to show cause why USA Medical should not be dismissed from the case based on its rulings. *Id.* USA Medical's counsel filed with the Court a letter acknowledging it was the employer of Pisney and Fennigkoh at all times material and therefore potentially vicariously liable under *respondeat superior* for the surviving state law claims against Pisney and Fennigkoh. (Dkt. 307). Plaintiff's counsel filed correspondence the same date agreeing. (Dkt. 308).

It has never been disputed that USA Medical employed Pisney and Fennigkoh. (*See* Dkt. 17 at 11 (ACH Defendants asserting in initial responsive pleading filed 2/4/21 that "ACH was not the employer of []Pisney or[]Fennigkoh at the time of the events alleged"); Dkt. 140 at 5 (USA Medical admitting paragraph 31 of plaintiff's complaint alleging that "USA Medical employed Lisa Pisney and Amber Fennigkoh"). Nor does USA Medical dispute that Pisney and Fennigkoh were acting within the scope of their employment. Accordingly, no facts or evidence need be introduced at trial pertaining to the sole claim pending against that entity—*respondeat superior*. The Court should preclude introduction of evidence or argument pertaining to USA Medical and its employment practices. Such testimony is irrelevant, prejudicial, and likely to confuse the jury as to the claims and evidence before it. Fed. R. Evid. 402-04. *See Tischauser v. Donnelly Transp. Inc.*, 2022 U.S. Dist. LEXIS 37366, at *8 (E.D. Wis. Mar. 3, 2022)(citing "majority rule" that, "if an employer has admitted *respondeat*

2

*superior* liability, "evidence of negligent hiring, training, supervision or retention becomes unnecessary, irrelevant, and prejudicial.")

**Motion in Limine No. 2:**

**Motion to Preclude Plaintiff from Offering Evidence Related to Advanced Correctional Healthcare's Alleged Corporate Practices**

Defendants move the Court for an order excluding any evidence or argument regarding Advanced Correctional's corporate policies or practices pursuant to Fed. R. Evid. 402-04. Advanced Correctional Healthcare, Inc. holds contracts for more than two hundred jails across the United States and plaintiff was permitted to conduct discovery into Advanced Correctional's corporate practices to support plaintiff's *Monell* claim. However, the Court granted summary judgment in favor of the defendant entities on plaintiff's *Monell* claims against them. The only claim against either entity that the Court allowed to proceed is plaintiff's claim that Advanced Correctional committed medical malpractice. (Dkt. 161 at ¶ 173-77; Dkt. 306 at 31). It is unclear what claims of negligence against Advanced Correctional, if any, plaintiff intends to pursue. The evidence should not include its "corporate practices" or conduct unrelated to Christine Boyer.

Any testimony or evidence of Advanced Correctional's corporate practices fails the test of Fed. R. Evid. 401. Rule 401 provides that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) is of consequence in determine the action." Evidence which is irrelevant is not admissible and should not be presented to a jury. Fed. R. Evid. 402.

Advanced Correctional's corporate practices are entirely irrelevant to the issue of medical malpractice and unnecessary to pursue a claim of vicarious liability. Advanced Correctional does

3

Case: 3:22-cv-00723-jdp   Document #: 209   Filed: 08/01/25   Page 4 of 19

not practice medicine and did not employ the staff that interacted with Ms. Boyer.[1] Therefore, its corporate practices and/or policies will not make it any more or less likely that *respondeat superior* liability falls on Advanced Correctional. After all, an entity may only be held liable for the actions of its servants—not its employees. *See* Wis JI-Civil 4030 (defining, for the purpose of *respondeat superior* liability, the term servant).

Defendants have reason to believe that plaintiff intends to introduce certain testimony through its experts, Homer Venters and Suzanne Bentley, related to Advanced Correctional's training program created for correctional officers and/or additional Advanced Correctional corporate practices. Because Advanced Correctional does not practice medicine, nor employ any healthcare providers or workers, the probative value of such evidence, if any, would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403 (allowing the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.")  All correctional defendants have been dismissed and there is no reason for the jury to hear testimony related to the training created for and provided to correctional officers. (*See* Dkt. 306 at 24 (noting that "In fact, the training is not even intended for healthcare providers; it's designed for non-medical jail staff who work at ACH-serviced facilities.")

The only reason plaintiff seeks to offer such evidence is to evoke the sentiment that Advanced Correctional is a "bad corporation" and to provoke jury sympathy. This will confuse the jury and unfairly prejudice the individual defendants. Advanced Correctional is not on trial for its corporate practices or policies; it is being sued for medical malpractice and vicarious liability. No

---

[1] In fact, Advanced Correctional has no employees. It contracts for services that are provided through its affiliated medical staffing company, USA Medical. *See* Lynch Deposition (Dkt. 227 at 44:19).

4

jury instruction can cure the confusion or the unfair prejudice which Advanced Correctional, and the individual defendants, will endure if plaintiff is permitted to admit evidence related to Advanced Correctional's corporate practices. This is exactly the sort of evidence Rule 403 exists to preclude. *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986).

Finally, this trial is already scheduled for multiple weeks, *see* (Dkt. 31 (two week trial as scheduled in *Boyer v Advanced Correctional Healthcare*), (Dkt. 21 (five to ten day trial as scheduled in *Boyer v USA Medical*). Precluding this evidence will undoubtedly reduce the length of trial and free up precious judicial resources.

Based on the foregoing reasons, this Court should enter an order precluding plaintiff from offering any testimony, evidence, or argument related to Advanced Correctional's corporate policies.

## Motion in Limine No. 3:

### Motion to Preclude Evidence or Argument Related to Advanced Correctional Healthcare's National Practices, Policies, Lawsuits and Settlements

Defendants move the Court for an order excluding any evidence or argument regarding healthcare provided by Advanced Correctional contracted medical professionals at any institution other than Monroe County Jail. *See* Fed. R. Evid. 402-04. This case is headed to trial on allegations that Ms. Pisney and Ms. Fennigkoh negligently provided medical care to Ms. Boyer on December 22, 2019. (Dkt. 306 at 31). Testimony, argument, or evidence related to Advanced Correctional's national healthcare practices is irrelevant to the question of whether Ms. Pisney or Ms. Fennigkoh were negligent in the care provided to Ms. Boyer on December 22, 2019.

During discovery, plaintiff embarked on a nationwide fishing expedition in an attempt to establish Advanced Correctional's nation-wide practice of providing bad medical care. Plaintiff was provided hundreds of thousands of pages of treatment records of patients cared for by

5

Advanced Correctional contracted healthcare providers at dozens of facilities nationwide. None of those records has any tendency to make a fact of consequence more or less likely regarding plaintiff's burden with respect to Ms. Pisney and Ms. Fennigkoh's actions in treating Ms. Boyer while she was detained at the Monroe County Jail. Fed. R. Evid. 401. Such irrelevant evidence should be excluded. Fed. R. Evid. 402.

Additionally, such testimony and evidence will necessarily confuse the issues for the jury. If the jury hears about an instance of care in a different state, at a different facility, under different circumstances, and that care was performed by different individuals, it will be difficult (if not impossible) after three weeks of testimony to accurately remember what care Ms. Boyer received from Ms. Pisney. The danger of an unfair prejudice and confusion is all too real. Plaintiff's *Monell* claims against Advanced Correctional and USA Medical were dismissed at summary judgment and introduction of evidence related to those claims may confuse the jury and cause them to render a verdict against Ms. Pisney and Ms. Fennigkoh for practices which played no role in either individual's decision making on December 22, 2019.

Furthermore, if plaintiff is permitted to introduce testimony it could improperly enflame the passions of the jury and cause the jury to enter a verdict inconsistent with the admissible evidence. For example, if plaintiff is permitted to present evidence or argue that Advanced Correctional provides "bad healthcare" nationwide by highlighting instances of bad outcomes from other jails such "evidence [] appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish" thereby causing the jury to assess punitive damages against Advanced Correctional while simultaneously finding that neither Ms. Pisney nor Ms. Fennigkoh violated their respective standards of care. *Cook*, 782 F.2d at 689 (quoting, J. Weinstein and M. Berger,

6

*Weinstein's Evidence* ¶ 403[03], at 4033-33-39(1985)). Rule 403 exists to exclude this exact type of evidence.

The same logic applies with equal force to the discovery information related to other lawsuits against Advanced Correctional and previous settlements. Plaintiff was permitted by the Court to obtain confidential settlement agreements. Such evidence bears no relevance to this matter and is impermissible propensity evidence under Fed. R. Evid. 404. Settlements are not admissible as a rule. Fed. R. Evid. 408.

For the foregoing reasons, this Court should enter an order precluding plaintiff from offering any evidence, testimony, or argument related to Advanced Correctional's nationwide practices and litigation against that entity.

## Motion in Limine No. 4:

### Motion to Preclude Evidence or Argument Related to Care Provided by Advanced Correctional Healthcare contracted staff at any Advanced Correctional Healthcare-Serviced facility other than the Monroe County Jail.

Defendants move the Court for an order excluding any evidence or argument regarding healthcare provided by Advanced Correctional contracted medical professionals at any institution other than Monroe County Jail pursuant to Fed. R. Evid. 402-04. The only medical professionals in this case are Ms. Pisney and Ms. Fennigkoh. Any discussion, argument, or introduction of evidence that references or relates to the provision of medical care by any provider other than Ms. Pisney or Ms. Fennigkoh should be precluded pursuant to Fed. R. Evi 402, 403, 404. Such an order should extend also extend to any testimony, lay or expert.

First, evidence of care provided by Advanced Correctional contracted staff at other facilities should be excluded pursuant to Fed. R. Evi 402 because none of the other care is relevant to the circumstances relevant to the care Ms. Boyer received, including Ms. Fennigkoh's and Ms.

7

Pisney's actions on December 22, 2019. The circumstances surrounding healthcare determinations performed by other professionals on other patients at different facilities do not tend to make any fact of consequence in this case more or less probable.

Second, the introduction of care rendered by other medical professionals at other facilities serviced by Advanced Correctional will unfairly prejudice Ms. Pisney and Ms. Fennigkoh. Neither individual was involved in providing healthcare at any of the other facilities from which plaintiff sought discovery materials, and introduction of such care could cause the jury to conclude unfairly that Ms. Pisney and Ms. Fennigkoh should bear the responsibility *in this case* for the medical care involving *other* Advanced Correctional contracted medical providers when those providers were neither involved in Ms. Boyer's care nor were Ms. Pisney and Ms. Fennigkoh involved in that other care. Fed. R. Evid. 403.

Third, introduction of this evidence will confuse the jury and waste precious court resources. Introduction of evidence related to bad outcomes at other jails could lead a jury to conclude that the issue in this trial is care provided by Advanced Correctional contracted medical providers in general. That is not the case and plaintiff's *Monell* claims were dismissed.

For these reasons, this Court should enter an order excluding all evidence and argument related to care provided by Advanced Correctional contracted medical professionals at other Advanced Correctional contracted facilities.

### Motion in Limine No. 5:

### Motion to Confirm Bifurcation of Damage Issues

Defendants request that the Court confirm that issues of damages will be tried separate from liability. The Court's Preliminary Pretrial Conference Order, issued April 12, 2021, provided that "Trial shall be to a jury of eight and shall be bifurcated." (Dkt. 31 at 6). Separate trial of

damage issues is necessary to prevent unnecessary expenditure of the jury's time and to prevent prejudice to the defendants, specifically the possibility that issues of emotion and sympathy may impact the jury's consideration of the evidence. Most problematically, plaintiff's claims of punitive damages are admissible as to some claims and not others. *See Lund v. Kokemoore,* 195 Wis.2d 727, 739 (1995)(holding punitive damages not recoverable in medical malpractice actions); *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 314 (1980)(holding punitive damages not recoverable under Wisconsin wrongful death statutes). The Court should adhere to its practice of bifurcating damages to avoid unnecessary evidentiary issues and prejudice that arises from introduction of evidence supporting punitive damages.

## Motion in Limine No. 6:

### Motion to Preclude Use of Pleadings as Evidence

Defendants move the Court for an order precluding use of pleadings prepared by counsel as substantive evidence. Specifically, plaintiff's expert, Dr. Bentley, cites a statement in the ACH Defendants' answer to the initial complaint as evidence of alleged poor judgment by Nurse Practitioner Pisney. (Dkt. 249 at 16-17). Specifically, she argued in her report: "Ms. Pisney's statement in her answer can be read to suggest that she instructed correctional staff to provide Ms. Boyer with aspirin because she suspected Ms. Boyer might be having a heart attack, even though Ms. Boyer herself knew that aspirin alone is never an effective treatment for heart attack." *Id*.

The use of the initial answer as substantive evidence is improper for multiple reasons. First, it is misleading and unfair to infer that counsel's vague response in an answer reflects the internal thought process of any one of several defendants. Ms. Pisney testified to her thought process with respect to ordering aspirin. (Dkt. 218 at 30:9-18).

More succinctly, the jury will be told the commentary of counsel is not evidence. Plaintiff's expert should not be permitted to draw inferences that the jury is not permitted to rely upon. *See*

9

*Rodriguez v. Gossett,* 842 F.3d 531, 539 (7th Cir. 2016)("This conclusion is further supported by the several limiting instructions given by the trial judge. The trial judge instructed the jury before closing arguments that it should not consider in its deliberations any statement made by either attorney that was not supported by the evidence.")

## Motion in Limine No. 7:

### Motion to Preclude Evidence or Argument Suggesting Pisney, Fennigkoh or Jail Staff were Investigated for Potential Criminal Charges

Defendants move the Court for an order excluding any evidence or argument that Jail healthcare or correctional staff were investigated for potential criminal charges. As would be the case in any jail death, an investigation by another agency was conducted following Ms. Boyer's death. The investigator testified that the scope of his review included for potential criminal conduct. (Dkt. 222 (Spencer Dep.) at 30:1-7). Plaintiff should not argue or suggest that investigators found cause to suspect criminal conduct. The entire field of inquiry is irrelevant and carries a potential for prejudice that substantially outweighs any probative value of the evidence. The parties should be precluded from referencing any "criminal" investigation. Fed. R. Evid. 402-04.

## Motion in Limine No. 8:

### Motion to Preclude Certain Opinions Offered by Dr. Venters

Defendants move the Court for an order precluding Dr. Venters' from offering testimony related to certain opinions contained in his expert report, Dkt. 246, pursuant to Fed. R. Evid. 401, 402, and 403.

Dr. Venters was disclosed by plaintiff to "testify as to any and all opinions arrived at in his previously disclosed expert report and rebuttal report." Dr. Venters' report purports "to assess the adequacy of care provided to Ms. Boyer in the time she was detained leading up to her death in

10

2019." Dr. Venters' offers four criticisms of the "care" provided to Ms. Boyer: (1) adequacy of Monroe County Jail's intake screening process; (2) adequacy of substance withdrawal protocols; (3) adequacy of response to medical emergencies; (4) mortality reviews. Each of these opinions should be excluded from trial for the following reasons.

First, the Court has already dismissed the claims against Advanced Correctional on *Monell* grounds. In doing so, the Court found that the intake screening process "cannot form the basis for a *Monell* claim because they are unrelated to the harm Christine suffered in the jail." (Dkt. 306, 21. In other words, Dr. Venters' opinions with respect to Monroe County Jail's intake are non-causal. Such opinions should be excluded pursuant to Fed. R. Evid. 402 and 403. They are irrelevant and therefore unfairly prejudicial.

Further, it is undisputed that Ms. Boyer did not present with any medical emergency when she was booked into the Monroe County Jail, therefore any testimony regarding the sufficiency of the intake screening is irrelevant to the remaining medical malpractice claims against these defendants. Moreover, Ms. Pisney did not participate in the intake screening process and therefore cannot be found liable for any perceived deficiency therein. Dr. Venters' opinions on the sufficiency of the intake screening should be barred pursuant to Fed. R. Evid. 402 as those opinions have no tendency to make a fact of consequence any more or less likely.

Most critically, Dr. Venters must not be allowed to opine that "Advanced Correctional failed" to do anything with respect to the intake screening. Advanced Correctional, the entity, was not involved in the intake screening. Monroe County Jail personnel completed the intake form, and nothing Ms. Boyer reported indicated an emergent medical need such that she should have been transported to the hospital.

11

Secondly, Dr. Venters' opinions related to the sufficiency of substance withdrawal protocols are irrelevant for two reasons. First, and most obviously, it is undisputed that Ms. Boyer was not suffering from withdrawal. Dr. Venters conceded that Ms. Boyer did not suffer withdrawal, thereby mooting the entire discussion. (Dkt. 223 (Venters Dep. Tr.) at 93:10-94:10). If Ms. Boyer was not suffering from withdrawal, then the sufficiency of a withdrawal protocol is entirely irrelevant to the administration of her healthcare. Discussing perceived deficiencies in protocols that are not relevant to the care Ms. Boyer received (because she was not withdrawing) will undoubtedly confuse the jury and is unfairly prejudicial to the defendants.

Third, Dr. Venters' opinion regarding mortality review is obviously a criticism of Advanced Correctional's corporate practices. *See* Motion in Limine No. 2, *supra*. More importantly, however, any opinion Dr. Venters holds regarding mortality reviews is necessarily irrelevant to any fact of consequence in this matter. This is so because the mortality review contemplates an 'after-action-report' in that it is a process to review the circumstances surrounding a death in a jail. It, therefore, cannot have any relevance to whether Ms. Pisney or Ms. Fennigkoh were negligent in providing care to Ms. Boyer on December 22, 2019.

The only opinion that Dr. Venters' holds that is plausibly relevant to any fact of consequence is his opinion related to responses to emergent conditions. However, Dr. Venters' opinions here too should be excluded. Dr. Venters spends considerable time discussing what he perceives to be deficiencies in Advanced Correctional's "chest pain form," however the protocol Dr. Venters reviewed is used by non-medical staff to record information in order to contact the on-call provider and give sufficient information for the provider to make an informed medical determination. It is undisputed that no Advanced Correctional personnel partook in the assessment which led to the completion of the chest pain protocol. The jury should not hear any testimony or

opinions related to any perceived deficiency in the protocol itself as the document does not tend to make a fact of consequence more or less probable. The protocol is only relevant insofar as Monroe County Staff used it to provide information to Ms. Pisney, and its use should be so limited. More concerning, Dr. Venters does not cite any standard of care for the opinions he holds in this section of his report. (*See* Dkt. 246, 20-24). Because Dr. Venters does not cite to any standard of care, his opinions with respect to the care provided by Ms. Pisney in response to Ms. Boyer's complaints of chest pain do not pass the muster of Fed. R. Evid. 702 and this court should exercise its gate-keeping function to preclude Dr. Venters from offering conclusory and unsupported opinions related to the standard of care.

For these reasons, this Court should enter an order limiting Dr. Venters' testimony as set out above.

**<u>Motion in Limine No. 9:</u>**

**Motion to Preclude Evidence or Argument that Ms. Boyer Experienced Conscious Pain & Suffering**

Defendants move the Court for an order precluding evidence or argument that Ms. Boyer experienced conscious pain and suffering after her medical event in the early morning of December 23, 2019. It is undisputed that Ms. Boyer died as a result of the sudden cardiac arrhythmia which she experienced in the early hours of December 23, 2019. Ms. Boyer was noted to be "in bed either rolling back and forth or feet moving" when she suddenly began exhibiting seizure like activity at 12:50:48 a.m. on December 23, 2019. Her "upper extremities [appeared] to go flaccid" and Ms. Boyer fell out of bed, striking her shoulders on a blue plastic tote before her feet hit the cement followed by her shoulders then head. (Dkt. 278-12 at Monroe_County_001105). Ms. Boyer was unresponsive when rescue attempts began. It is also undisputed that Ms. Boyer did not regain consciousness at any point after experiencing sudden cardiac arrhythmia.

"A decedent's estate may pursue a claim against a tortfeasor 'for pain and suffering during the period intervening between the accident and death . . .' But if the decedent was not conscious during that interval, he necessarily did not experience any pain or suffering." *Leibfried v. Caterpillar*, 701 F.3d 774, 782-783 (E.D. Wis. Nov. 3, 2023)(internal citations omitted).

Ms. Boyer's estate lacks any evidence that Ms. Boyer was conscious at any period following her sudden cardiac arrhythmia on Monday, December 23, 2019. It is plaintiff's burden to prove more likely than not that Ms. Boyer was conscious and experienced pain and suffering before she died. *Id*. 784. Because plaintiff will not be able to produce evidence that Ms. Boyer was conscious at any point after her cardiac arrhythmia, plaintiff should not be allowed to argue that Ms. Boyer suffered or agonized or experienced pain in any way. Such argument would irreparably prejudice the jury and such prejudice would substantially outweigh any probative value; the probative value being none.

## Motion in Limine No. 10:

### Motion to Preclude Evidence or Argument that Greg Boyer Experienced Fear or Emotional Distress

Plaintiff's negligent and intentional infliction of emotional distress claims were dismissed during summary judgment, in part, because plaintiff failed to adduce evidence from which a reasonable jury could plausibly find that Ms. Boyer suffered a severe emotional response. Indeed, this Court has already found that Mr. Boyer admitted that no one observed Ms. Boyer in any distress in the hours before her cardiac arrhythmia. Dkt. 306 at 26; *see also Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir 1992)(*citing Barret v Baylor,* 457 F.2d 119, 123 (7th Cir. 1972) for law of the case doctrine).

Moreover, Mr. Boyer's negligent infliction of emotional distress claim is barred by Wisconsin law. Allowing plaintiff to offer testimony purportedly related to emotional distress will

14

be substantially more prejudicial than probative and confuse the jury immensely as there are no claims headed to trial for which emotional distress is an element to be proven. Furthermore, any testimony regarding an emotional response would be, necessarily, purely speculative and introduced for no other purpose than to evoke sympathy. Such evidence should be excluded pursuant to Fed. R. Evid. 403. *Cook, supra*.

The Court's Scheduling Order, Dkt. 31, provides that this trial will be bifurcated into a liability and damages phase. Any testimony related to emotional distress would only be proper in assessing damages and has no part in any liability testimony.

## Motion in Limine No. 11:

### Motion to Preclude Evidence or Argument Regarding Indemnification or Insurance.

The remaining defendants in this matter fall into two categories: individuals and entities. Neither Ms. Pisney, nor Ms. Fennigkoh, has placed her financial condition at issue in this action and neither intends to do so at trial. Ms. Fennigkoh's and Ms. Pisney's employer, USA Medical, provides insurance coverage through Advanced Correctional, subject to the terms, conditions, and exclusions of the policy. This Court, however, should not permit evidence or testimony regarding insurance or indemnification pursuant to Fed. R. Evid. 402, 403, and 411 because neither Ms. Pisney nor Ms. Fennigkoh will place her financial condition at issue.

The general rule is that evidence of indemnification and insurance is excluded "out of a fear that it will encourage a jury to inflate its damages award because it knows the [entity]—not the individual defendant—is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)(*citing e.g., Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994). Unlike in *Lawson*, no individual defendant will "open[] the door" to evidence related to the individual defendants' financial strength or weakness. *Id*.

15

Accordingly, the Court should not allow plaintiff to present any evidence of insurance coverage or indemnification to the jury pursuant to Fed. R. Evid. 402 and 403. Whether the individual defendants potentially are subject to insurance coverage or indemnification cannot aid the jury in determining whether any consequential fact is more or less probable. The mere discussion of insurance, by contrast, is sure to conflate any damages the jury is contemplating. That is unfairly prejudicial under Rule 403.

More importantly, Fed. R. Evid. 411 explicitly eliminates any argument that evidence of insurance is admissible to prove negligence or other wrongful activity. *See also Adams Labs, Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226-27 (7th Cir. 1985). The Court should apply these same well-established principles and enter an order precluding plaintiff from offering evidence, testimony, or argument related to the topic of insurance coverage or indemnification.

## Motion in Limine No. 12:

**Motion to Preclude Evidence or Argument That Defendants Could Have Obtained Ms. Boyer's Prescription Information from Her Primary Care Providers**

Defendants conducted the deposition of Ms. Boyer's primary care physician, Dr. Rick Erdman, on July 22, 2025. Dr. Erdman has been disclosed by plaintiff as a non-retained expert under Fed. R. Civ. P. 26(2)(C). At the conclusion of defendants' questioning concerning the care Dr. Erdman rendered to Ms. Boyer, plaintiff's counsel elicited several "standard of care" questions on hypotheticals posed to him. One question concerned whether a hypothetical healthcare provider could obtain information about a hypothetical patient of Gundersen Health System by calling a hypothetical agent "after hours or on weekends." Lacking any further details relevant to the matter, Dr. Erdman testified that he believed so.[2]

---

[2] Dr. Erdman's deposition transcript has not yet been completed. Defendants will provide it to the Court upon receipt.

Plaintiff should not be allowed to elicit this testimony from Dr. Erdman for several reasons. First, a hypothetical question about what might have occurred if a hypothetical caller placed a hypothetical call to a hypothetical agent is not information related to Dr. Erdman's care of Ms. Boyer. Dr. Erdman is not a "transactional" witness with respect to an event that did not occur. Rather, the question is the type that would be elicited of a knowledgeable corporate representative or a retained expert. Defendants were not advised of the subject matter of the anticipated testimony, nor was plaintiff's disclosure appropriate or complete, even now. The testimony should be excluded for that reason.

In addition, the testimony should be precluded for lack of foundation. No foundation for Dr. Erdman's personal knowledge of the process, particularly as it existed in 2019, was elicited. Plaintiff should not be allowed to introduce an opinion that surprised both the witness and counsel without complying with Rule 26 disclosure mandates and Fed. R. of Evid. 602 (requiring personal knowledge of the witness).

Finally, plaintiff conceded at summary judgment that Jail healthcare staff were unable to obtain information from Gundersen Health System on weekends or after hours. (Dkt. 280 at 27, para. 129). Its response was as follows:

> 129. Gundersen Health System responded to requests for patient medical records Monday through Friday, 8:00 a.m. to 5 p.m. Gundersen Health System did not respond to Jail providers requests for patient medical records on weekends or after hours. (Fennigkoh Tr. at 194:1-14 & 198:1-17).
>
> **Undisputed**.

*Id*.

The Court relied on plaintiff's concession, finding as a material fact that the Jail medical and correctional staff were unable to obtain information about Ms. Boyer's condition over the weekend. (Dkt. 306 at 11). It stated, "The parties agree that Christine's health care provider and pharmacy were not open on the weekend, so jail staff could not get her medical records or verify her medications until Monday." *Id*. The Court having relied on the concession and found as fact against plaintiff in its summary judgment opinion, plaintiff is estopped and precluded from contesting the issue now. *See Estate of Rille v. Phys. Ins. Co.,* 2007 WI 36, P48, 300 Wis. 2d 1, 728 N.W.2d 693 (2007)(holding that litigant is precluded from relitigating issue adjudicated on summary judgment); *Precision Erecting, Inc. v. M&I Bank,* 224 Wis. 2d 288, 310, 728, 592 N.W.2d 5 (1998)("A court cannot adjudge the facts to be one way with regard to some parties to a multiparty claim and adjudge the same factual dispute another way as to other parties in the same action. That would be absurd. *There can be only one finding of each historical fact per case. That the facts might be determined as a result of summary judgment is not material*." (Italics supplied)). Plaintiff should not be allowed to relitigate a fact it could not contest and upon which the Court relied in its decision.

## CONCLUSION

For all these reasons, defendants respectfully request that the Court grant these motions *in limine*, together with such other relief as the Court deems just and appropriate.

Dated this 1st day of August, 2025.

**LEIB KNOTT GAYNOR LLC**

By: */s/ Douglas S. Knott*
    Douglas S. Knott, SBN 1001600
    Daniel A. Kafka, SBN 1122144
    Attorneys for Defendants

219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2102
Fax: (414) 276-2140
Email:  dknott@lkglaw.net
        dkafka@lkglaw.net