IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREGORY BOYER, as administrator of the
Estate of Christine Boyer, and on his own
behalf,

           Plaintiff,

  v.

ADVANCED CORRECTIONAL HEALTHCARE,
INC., LISA PISNEY, and AMBER FENNIGKOH,

           Defendants.

ORDER

20-cv-1123-jdp

---

GREGORY BOYER, as administrator of the
Estate of Christine Boyer, and on his own
behalf,

           Plaintiff,

  v.

USA MEDICAL & PSYCHOLOGICAL STAFFING,

           Defendant.

ORDER

22-cv-723-jdp

---

Plaintiff Gregory Boyer's wife Christine suffered a fatal cardiac arrest while incarcerated at the Monroe County jail. Boyer is suing defendants Advanced Correctional Healthcare (ACH) and nurses Amber Fennigkoh and Lisa Pisney for providing inadequate medical care to Christine. Defendant USA Medical & Psychological Staffing employed Fennigkoh and Pisney. The case is scheduled for trial on September 29, 2025.

Last week, in response to the court's order accepting Boyer's amended proposed jury instructions, defendants moved to dismiss Boyer's negligent supervision and training claim against ACH under Federal Rule of Civil Procedure 12(c) and 12(h)(2). Dkt. 353. Defendants say that they learned Boyer was asserting a negligent supervision and training claim against

ACH only when he submitted these amended instructions. They contend that the claim should be dismissed because Boyer didn't adequately plead it in his fourth amended complaint.

The court will deny defendants' motion to dismiss. Under federal notice pleading standards, a plaintiff does not need to plead legal theories. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). So in evaluating the sufficiency of a complaint, the question is whether the complaint fairly asserts the underlying facts to support the claim. *Id.*

At issue here is Boyer's claim that ACH negligently supervised and trained defendant nurses Fennigkoh and Pisney. Negligent supervision and training claims, like all negligence claims, have four elements: (1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal,* 197 Wis.2d 409, 418, 541 N.W.2d 742 (1995). In Wisconsin, everyone owes a duty of care to avoid causing foreseeable harm to others. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998). That means that every entity must exercise due care in training and supervising its employees. An entity is liable for negligent supervision and training if it fails to do so, and if that failure is a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury. *Id.* at 262.[1]

---

[1] Although the fourth amended complaint states that Fennigkoh and Pisney are employees of ACH, the parties now agree that they were employees of USA Medical and Psychological staffing, not ACH. But Boyer's position is that ACH was responsible for supervising and training Fennigkoh and Pisney even though they were not officially employees. Defendants do not argue in their brief that Boyer's negligent supervision and training claim fails as a matter of law because Fennigkoh and Pisney were not officially employees.

It is difficult to square defendants' contention that Boyer's complaint is deficient with the court's ruling more than two years ago on defendants' motion to dismiss Boyer's *Monell* claim. Dkt. 134. In that ruling, the court held that Boyer had adequately pleaded a *Monell* claim based on ACH's practices of training its medical practitioners to discount detainees' medical concerns, to reduce referrals to outside medical providers, and to delay care and medication in the hope that detainees would be released before costs are incurred. *Id.* at 8. To establish *Monell* liability, a plaintiff must show that an entity acted with deliberate indifference, a higher bar than negligence or even gross negligence. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Boyer's negligence claims against ACH are based on the same practices as his *Monell* claim, so it is difficult to believe that the defendants did not know when the court denied the motion to dismiss the *Monell* claims that negligence claims based on those same practices were also in play.

Nevertheless, defendants contend that Boyer only alleged negligence by Fennigkoh and Pisney, not ACH. Defendants point to Count III of Boyer's fourth amended complaint, which reads as follows:

**COUNT III**
**MEDICAL MALPRACTICE**
**(ACH, PISNEY AND FENNIGKOH)**

>174. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.
>
>175. As described more fully herein, Defendants Pisney and Fennigkoh both owed Ms. Boyer a duty of care similar to medical professionals with similar qualifications.
>
>176. As described more fully herein, Ms. Pisney and Ms. Fennigkoh breached that their duty of care to Ms. Boyer.
>
>177. As a proximate result of these breaches, Ms. Boyer was injured, suffered pain and emotional damage, and died.

3

Dkt. 161. Defendants say that the reference to "ACH" in the subtitle of this section is the only indication that Boyer is pursuing a negligence claim against ACH. But defendants ignore all the factual allegations in the complaint that precede the statement of Boyer's claims, including the following allegations about ACH's training and supervision practices:

- ACH trains its employees to provide less care to detainees and applies pressure on its employees to provide less care. *Id.*, ¶ 131.
- ACH trains its practitioners to ignore or discount detainees' medical concerns as things the inmate "wants" rather than legitimate medical needs. *Id.* ¶ 134.
- ACH pressures practitioners to cut back on the quality of care provided to detainees, if that care requires referral to an outside provider or otherwise increases costs. *Id.* ¶ 135.
- In the time leading up to Christine's death, Monroe County jail supervisor Stan Hendrickson called ACH's medical director, urging him to tell Pisney to cut back on the number of detainees at the jail who were prescribed medications. *Id.* ¶ 138.

These allegations are more than sufficient to support a reasonable inference that ACH failed to exercise due care in training Fennigkoh and Pisney, and that that failure was a cause-in-fact of Christine's injury at the jail.

Defendants also contend that Boyer's negligent supervision and training claim should be dismissed because he failed to identify that theory of liability in response to defendants' contention interrogatories. On February 16, 2022, defendants served an interrogatory asking Boyer to "identify all facts to support your allegations . . . that ACH Defendant acted with negligence, and/or with willfulness, and reckless indifference to your rights or the rights of others." Boyer responded in relevant part: "the actions and omissions of Lisa Pisney and Amber Fennigkoh described in Plaintiff's responses to Interrogatory 16 are evidence that Ms. Pisney and Ms. Fennigkoh acted with negligence, and/or with willfulness, and reckless indifference to your rights or the rights of others." Dkt. 353, at 12. Defendants say that they believed based

4

on this interrogatory that Boyer was pursuing direct negligence claims against only Fennigkoh and Pisney, and that any negligence claim against ACH was solely a derivative claim based on vicarious liability.

A party is bound to formal statements made in the pleadings as judicial admissions. In addition to statements in the pleadings, "deliberate, clear, and unequivocal" statements made in the course of judicial proceedings can qualify as judicial admissions. *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677 (7th Cir. 2002). Boyer's response to the interrogatory here did not include the bases for his negligence claim against ACH, but it is far from a deliberate, clear, and unequivocal statement that Boyer did not intend to pursue a direct negligence claim against ACH based on a negligent supervision and training theory.

Defendants maintain that they were unaware that Boyer might pursue a negligent supervision and training theory until Boyer submitted his amended proposed jury instructions, but that is implausible. Boyer first asserted a negligence claim against ACH in his third amended complaint in July 2022. Defendants say that they believed that this claim was solely a derivative claim based on vicarious liability. But in their brief, they also say that they informed Boyer in 2021 that Fennigkoh and Pisney were not employees of ACH, so ACH could not be vicariously liable for their actions. Yet defendants did not move to dismiss the negligence claim against ACH, nor did they move for summary judgment on that claim. If defendants truly thought the negligence claim was based solely on a vicarious liability theory, it is difficult to believe that they would not have sought summary judgment on that claim on the basis that Fennigkoh and Pisney are not ACH employees. Further, defendants explicitly mentioned a direct negligence claim against ACH when they moved to bifurcate the trial. Dkt 313, at 3. Defendants filed the motion to bifurcate more than three weeks before Boyer moved to amend

5

his proposed jury instructions, belying defendants' assertion that they only just discovered Boyer's intention to pursue this claim.

Even if defendants did not anticipate a negligent supervision and training claim, the court is not persuaded by defendants' assertion of prejudice. Defendants say that they have not had a chance to conduct discovery and "identify appropriate lay and expert witnesses to respond" to the negligent supervision and training claim. Dkt. 353, at 12. But as the court discussed earlier, that claim is based on the same conduct as Boyer's *Monell* claim against ACH, so the extensive discovery the parties conducted for the *Monell* claim should also apply here. Defendants have asserted prejudice in conclusory fashion, but they haven't actually identified any discovery that they have not obtained or any witnesses that they have not identified.

In sum, the court sees no reason to bar Boyer from pursuing a direct negligence claim against ACH based on a theory that ACH negligently supervised and trained Fennigkoh and Pisney. Two issues remain. First, defendants ask the court to compel Boyer to supplement his interrogatory responses and to allow defendants to supplement their expert disclosures and their Rule 26(a)(3) disclosures. The court will deny this motion. The court can compel Boyer to supplement discovery only if defendants certify that they have conferred in good faith with Boyer on the issue, which defendants have not done here. Fed. R. Civ. P. 37(a)(1). And defendants have not shown good cause to supplement their disclosures because, as explained above, the court is not convinced that they were unaware of Boyer's negligent supervision and training theory when they filed their disclosures. In any event, defendants have not said what exhibits or witnesses they want to add; the court will not give defendants blanket permission to add new exhibits and witnesses at this late stage.

Second, defendants argue in their reply brief that Boyer is using the negligent supervision and training claim as a backdoor method to put the evidence in support of his dismissed *Monell* claim in front of the jury. Defendants argue that Boyer wants to use the negligence claim to introduce evidence of ACH's "corporate greed" and "other bad acts," to convince the jury that ACH is a bad company. The court shares this concern. Boyer's negligent supervision and training claim is based on ACH's alleged failure to adequately train and supervise Fennigkoh and Pisney, which Boyer says was a cause-in-fact of the negligent acts they took that caused injury to Christine. General evidence about ACH's business practices is irrelevant. All that matters is how ACH trained and supervised Fennigkoh and Pisney specifically, and even that evidence only matters if Boyer can connect it to the care that Christine received. Yet Boyer's exhibit list contains multiple exhibits that appear to be unrelated to Fennigkoh and Pisney's training or to Christine's care, several of which the defendants identified in a brief opposing Boyer's amended exhibit list. Dkt. 355. For example, Boyer's exhibit 13 is an ACH-created video called "Detox in Jails." Dkt. 354. Even if Fennigkoh and Pisney viewed this video as part of their training, there is no evidence that Christine was suffering from drug withdrawal, so it is not clear why this is relevant to the care that Christine received. As Boyer narrows his exhibit list in preparation for trial, he should take care to connect his evidence about ACH's training and supervision practices to the alleged negligence by Fennigkoh and Pisney. If Boyer fails to draw a sufficient connection, the court will be receptive to objections under Rule 404(b) or Rule 403.

ORDER

IT IS ORDERED that defendants' motion for reconsideration and motion to dismiss, Dkt. 353, is DENIED.

Entered September 5, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge